COLBURN, Respondent, v. NORTHERN PACIFIC RAILROAD COMPANY, Appellant.

[Argued, November 28, 1893. Decided, December, 4, 1893.]

NORTHERN PACIFIC GRANT—*Decision of secretary of interior—Collateral attack.*— The decision of the secretary of the interior that certain land was not included within a grant to the defendant corporation is conclusive until, reversed in a direct proceeding for that purpose, and cannot be collaterally attacked in an action to recover the purchase price of the land by one to whom it had been conveyed by the defendant.

VENDOR AND VENDEE—*Contract to convey—Breach.*—A contract by the vendor of land to make and deliver a deed to the vendee that "shall convey the said premises," is not complied with by the mere delivery. of a warranty deed so as to prevent the recovery of the purchase money paid under the contract where it is subsequently determined that the vendor had no title to convey.

SAME—*Contract to convey—Breach and remedy.*—A vendee who has accepted a deed from a vendor who is afterwards found to have had no title to convey is not compelled to await an ouster and then sue on the covenants of the deed, but may sue to recover the money paid on a contract for the purchase of the land.

*Appeal from Ninth Judicial District, Gallatin County.*

Action to recover purchase price of land. Plaintiff's demurrer to the answer was sustained by ARMSTRONG, J. Affirmed.

Statement of facts prepared by the justice delivering the opinion.

This action is brought to recover five hundred and sixty-seven dollars and forty cents, with interest, paid by respondent to appellant upon a certain contract for the sale of lands. The complainant alleges the corporate existence of the appellant under the act of Congress approved July 2, 1864; the grant of lands made to appellant by that act of Congress; the entering into a contract by appellant with one Nathan Frost to sell, convey, and transfer the north half of the southeast quarter, of section 23, township 3 south, of range 4 east, Gallatin county, Montana, to said Frost; the subsequent transfer of the contract to respondent; and the compliance with its conditions by respondent and his predecessors in interest, including the payment of the purchase price of said land, the total amounting to five hundred and sixty-seven dollars and forty cents. The complaint also alleges that appellant neither has nor can con-

vey any title to said land, or any part thereof, as covenanted in said contract, and that on the twenty-fourth day of January, 1891, the secretary of the interior held that the said land did not pass to the railroad company under its grant, but remained public land; and further alleges that in the year 1891 a patent for the said land was issued by the United States to respondent. It then alleges the demand for the return of the purchase price of the land paid under the contract, and the refusal of the defendant to return the same.

The answer admits the corporate existence of appellant, and sets up the grant of lands made to appellant by the act of congress approved July 2, 1864. It alleges that the railroad company fixed the line of its general route through the territory of Montana, February 21, 1872, and, having located its line of definite location, fixed the same by filing a plat thereof in the office of the commissioner of the general land office, July 6, 1882. It then alleges that the land in controversy was on and within forty miles of the line of the road, so definitely fixed as aforesaid. It also alleges the subsequent completion of the road, as required by the act of July 2, 1864, and its acceptance by the president of the United States; such completion and acceptance being prior to the contract of sale mentioned in the complaint. It admits the existence of a homestead entry on the land, January 28, 1871, which entry was canceled on or about December 3, 1872, having been relinquished by Anna McCarty, the entryman. It also admits that a declaratory statement was filed for this land December 29, 1874, by one Nathan Farnham, but sets up that thereafter, and long prior to July 6, 1882, Farnham had abandoned the land, if, indeed, he ever settled thereon; that there were no other entries or filings, or application to make entry or filing, upon said lands whatsoever, prior to July 6, 1882, and that the said land was on July 6, 1882, public land, to which the United States had full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, as set forth in said answer; and that said land was, and at all times has been, non-mineral land. It admits the making of the contract with said Nathan Frost on January 16, 1886, and sets forth said contract in full. It admits the assignment of said

contract to said respondent, and sets up that, on the compliance with the terms of the contract by respondent and his predecessors in interest, the said appellant made, executed, and delivered to said respondent its deed, wherein and whereby it duly conveyed the title to said land to said respondent, as in and by said contract it had agreed to do; and that in and by said deed, said defendant covenanted and agreed to and with said respondent, his heirs, and assigns, that it shall and will warrant and defend the title to said granted premises unto the said plaintiff, his heirs, and assigns, forever, against the lawful claims of all persons whomsoever, excepting for taxes and assessments. It then sets up the application to enter the land by one John R. Foster, the respondent's immediate grantor, under the claim that the land was excepted from the grant to the Northern Pacific; the ordering of a hearing on said application, by the commissioner of the general land office; the decision by the register and receiver of the United States district land office at Bozeman, Montana, made thereon during the year 1888; the appeal taken from said decision to the commissioner of the general land office; the decision of the commissioner of the general land office, made in February, 1889, holding said land to be excluded from said grant to the Northern Pacific; the appeal by the company from that decision to the secretary of the interior; and the decision of the secretary, adverse to the company, made December 12, 1890, setting forth said decision in full. It denies, from lack of information and belief, that any patent has been issued for the land to the respondent or any one else. It sets up that the land was non-mineral public land, to which the United States had full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights, at all times mentioned in the answer, except as particularly set forth in said answer. It denies that the respondent has been ousted or disturbed in his possession, or that his title has been impaired or assailed in any manner whatsoever, or that there has been any breach of warranty contained in said contract and deed; and denies that there is any amount due from appellant to respondent, or that respondent has suffered any injury. It also sets up the fact that the respondent knew, long prior to the time of the assignment of

the contract to him by said Foster, of the said pretended claim that the land was excepted from the grant to the Northern Pacific, and was not the property of the company. To this answer respondent demurred upon the ground that it did not state facts sufficient to constitute a defense. The court below, after hearing, sustained the demurrer. Appellant declining to amend, judgment was entered in favor of respondent, November 14, A. D. 1892. From the order sustaining said demurrer, and from the judgment entered in said cause in favor of respondent, this appeal was duly taken.

*W. E. Cullen,* and *Fred M. Dudley,* for Appellant.

I.   To entitle respondent to recover there must have been a breach of the agreement "to make, execute, and deliver a good and sufficient warranty deed." No such breach is alleged. The contract alleged refers merely to the validity and sufficiency of the deed in point of law to convey whatever right respondent had in the premises, and not to the title thereby conveyed. And even admitting the averment that appellant neither has nor can convey title, to be well pleaded and true, it does not show a breach of the contract. (*Preston* v. *Whitcomb,* 11 Vt. 47; *Van Eps* v. *Schenectady,* 12 Johns. 436; 7 Am. Dec. 330; *Gazley* v. *Price,* 16 Johns. 267; *Parker* v. *Parmele,* 20 Johns. 130; 11 Am. Dec. 253; *Aiken* v. *Sanford,* 5 Mass. 494.) The contract was not to convey a specific title, the one the company might receive under its grant; and conceding that the secretary held the land described was excluded from appellant's grant, and further conceding that such decision was correct, and final, it by no means follows that appellant cannot or has not fully complied with the contract and conveyed the title to the land to respondent by a "good and sufficient warranty deed." Nor is the averment that a patent has been issued to respondent necessarily inconsistent with a perfect performance by appellant of its contract. A patent is but a quitclaim deed from the United States, and if the government had already parted with the title it conveys nothing. (*Wright* v. *Roseberry,* 121 U. S. 518 et seq.; *Doolan* v. *Carr,* 125 U. S. 624; *Steel* v. *Smelting Co.,* 106 U. S. 452, 453; *Smelting Co.* v. *Kemp,* 104 U. S. 641; *Miller* v. *Tobin,* 16 Or.

540; *Iron Silver M. Co.* v. *Campbell,* 135 U. S. 286; *Francoeur* v. *Newhouse,* 40 Fed. Rep. 623; *Northern Pac. R. R. Co.* v. *Wright,* 51 Fed. Rep. 71.)

II.   Nor is the averment that the secretary of the interior has decided the land was open public land of the United States, subject to entry, sufficient to show a breach of the contract.   If the land be not public the secretary has no jurisdiction.   (*Moore* v. *Robbins,* 96 U. S. 533; *United States* v. *Schurz,* 102 U. S. 402; *Tubbs* v. *Wilhoit,* 138 U. S. 145, 146; *Hardin* v. *Jordan,* 140 U. S. 400; *Doolan* v. *Carr,* 125 U. S. 624.)   The determination of the secretary alleged was simply a determination as to his own jurisdiction.   The interior department is a tribunal of limited jurisdiction.   A general averment of jurisdiction in such case is insufficient.   (Wells on Jurisdiction of Courts, secs. 40, 41; *People* v. *Koeber,* 7 Hill, 41; *Board of Commissioners* v. *Markle,* 46 Ind. 111; *State* v. *Ely,* 43 Ala. 575; Lawson on Presumptive Evidence, 27, 29.)   If the secretary had no jurisdiction his decision is void for all purposes, and in the absence of the allegations of fact showing such jurisdiction it cannot be presumed.   In *Northern Pac. R. R. Co.* v. *Amacker,* 53 Fed. Rep. 52, Judge Knowles says: "The ruling of the land department does not determine the right to, or ownership of, land when the government has parted with the same, but only as to whether the government should issue or not a patent to the land claimed by the applicant."   (See, also, *Northern Pac. R. R. Co.* v. *Wright,* 51 Fed. Rep. 71; *Iron Silver M. Co.* v. *Campbell,* 135 U. S. 292, 293, 294; *Wright* v. *Roseberry,* 121 U. S. 518 et seq.; *Miller* v. *Tobin,* 16 Or. 540; *Stimson* v. *Clarke,* 45 Fed. Rep. 760; *Megerle* v. *Ashe,* 33 Cal. 83, 89.)

III.   Respondent having accepted a deed cannot now recover on the contract.   His remedy, if any, is on the covenant in the deed.   Appellant complied with the contract sued upon by giving a deed with covenants of warranty as it agreed to do; and the respondent accepted such deed in satisfaction of appellant's agreement.   Having accepted the deed in satisfaction of the contract, and retaining every advantage acquired under the contract and deed, he cannot now question the sufficiency of appellant's compliance therewith and demand the

return of every consideration moving from himself. The law will not permit him to play fast and loose; blow hot and cold. (Herman on Estoppel, sec. 1039, 1041.) Respondent could not rescind this contract, even if the deed had not been made, and recover the consideration paid without first placing appellant in *statu quo.* Much the less can he retain the deed conveying appellant's claim, title, and interest, whatever it may be, and yet so rescind the executed contract and recover. (*Fay* v. *Oliver*, 20 Vt. 123; 49 Am. Dec. 764; *Caswell* v. *Black River etc. Mfg. Co.*, 14 Johns. 453; *Fuller* v. *Hubbard*, 6 Cow. 13; 16 Am. Dec. 423; *Gale* v. *Nixon*, 6 Cow. 445.) Respondent's right of action, if he have one, must now be upon the covenants of warranty contained in the deed; having elected to accept the deed, he must abide by the remedies given therein. (Waterman on Specific Performance, sec. 418; *Patton* v. *Taylor*, 7 How. 133; *Bryan* v. *Swain*, 56 Cal. 616; *Davenport* v. *Whisler*, 46 Iowa, 287; *Clifton* v. *Jackson Iron Co.*, 16 Am. St. Rep. 622, note; *Shontz* v. *Brown*, 27 Pa. St. 123; *Godding* v. *Decker* (Col. App., March 27, 1893), 32 Pac. Rep. 832; *Bell* v. *Keepers*, 39 Kan. 105; *Harvey* v. *Morris*, 63 Mo. 475; *McIndoe* v. *Morman*, 26 Wis. 588; 7 Am. Dec. 96; *Keater* v. *Colorado Coal etc. Co.* (Col. App., March 27, 1893), 32 Pac. Rep. 857; *Dennis* v. *Jones*, 44 N. J. Eq. 513; 6 Am. St. Rep. 899; *Garrett* v. *Lynch*, 44 Ala. 324; *Martin* v. *Chambers*, 84 Ill. 579; *Schneider* v. *Foote*, 27 Fed. Rep. 581; *Farwell* v. *Hanchett*, 120 Ill. 573; *Dillman* v. *Nadlehoffer*, 119 Ill. 567; *Doane* v. *Lockwood*, 115 Ill. 490; *Turner* v. *Cruzen*, 70 Iowa, 202; *Potter* v. *Taggart*, 59 Wis. 1; *First Nat. Bank* v. *Yocum*, 11 Neb. 328; *Gates* v. *McLean*, 70 Cal. 42; *Pearsoll* v. *Chapin*, 44 Pa. St. 9; *Atchison etc. R. R. Co.* v. *Starkweather*, 21 Kan. 322.)

*Staats & Holloway*, for Respondent.

I. The contract with the appellant company in this case was for *the* title to the land; not for a deed alone, or for whatever interest, if any, the appellant company had in the land. The object in bargaining for "a good and sufficient deed of conveyance" was to obtain a good title to the land. (*Thayer* v. *White*, 3 Cal. 229; *Clute* v. *Robison*, 2 Johns. 611.) The question is, did the defendant railroad company comply with the

terms of the contract as to those matters by it to be kept and performed? 1. Did it sell the land in question to Frost or his assignees? or 2. Did it convey title to its grantee, Frost, or his assignees? There must be subject matter (consideration) to constitute a valid sale or conveyance, and the lack of it invalidates the sale. "For if that for which the contract was made proves a nullity the contract becomes void." (Bishop on Contracts, § 71; *Jeffries* v. *Lamb*, 73 Ind. 202; *Snyder* v. *Kurtz*, 61 Iowa, 593; *Riddell* v. *Blake*, 4 Cal. 264; *Thayer* v. *White*, 3 Cal. 228.) The allegation of the inability of the appellant railroad company to convey any title for want of some title to convey, is an allegation of the breach of the contract on the part of the defendant. (Bishop on Contracts, § 70.)

II. The land department is the tribunal to decide questions relating to the proceedings whereby a conveyance of the title from the United States to portions of the public domain is obtained, and its decision on matters of fact, in the absence of fraud or imposition, is conclusive everywhere else. Only where it has clearly mistaken the law of the case as applicable to the facts, can its judgment be assailed, and then only by direct proceedings. (*Johnson* v. *Towsley*, 13 Wall. (U. S.) 72; *Shepley* v. *Cowan*, 91 U. S. 330.) The decisions of the land department on all disputed questions of fact, when assailed collaterally, must be taken as conclusive. (*Shepley* v. *Cowan* 91 U. S. 330; *Boyce* v. *Danz*, 29 Mich. 146; *Steel* v. *St. Louis S. & R. Co.*, 106 U. S. 447; *Baldwin* v. *Stark*, 107 U. S. 463.) The appellant cannot be heard to attack the ruling of the land department collaterally, as it is trying here to do. But if it could so attack it, its efforts in that direction in this case are fruitless. The pleadings settle that at the date of withdrawal, on filing map of general route February 21, 1872, this tract of land was covered by the filing of Anna McCarty, which excepted it from the operation of that withdrawal. (*United States* v. *Burlington etc. R. R. Co.*, 98 U. S. 334.)

III. There is no allegation in the answer of the acceptance by the plaintiff of the deed; on the contrary it appears that he did not accept it, but repudiated it, and demanded his money immediately on the discovery that the defendant had no title to the land. It is true there is no allegation of a return of the

deed, but even supposing it was not returned, was it necessary for plaintiff to return the deed or give up possession of the property in order to sue for breach of the contract? If the defendant had no title to the land its deed conveyed none and was worth only the paper upon which it was written. In order that the defendant be put in *statu quo* it is only necessary for plaintiff to return whatever of any value to himself or the other he has received under the contract, yet he need not include in this what is without possible benefit. (*Herman* v. *Haffenegger*, 54 Cal. 161; *Lane* v. *Latimer*, 41 Ga. 171; *Thurston* v. *Blanchard*, 22 Pick. 18; 33 Am. Dec. 700; *Underwood* v. *West*, 52 Ill. 397.) The pleadings show that the plaintiff derived no advantage whatever from the deed, in that it conveyed no title, and appellant was in the same position relative to the land in question after the delivery of the deed to the plaintiff below as before. It lost no interest in the land by the deed, for it never had any. It was in *statu quo*. Neither was it necessary for plaintiff to give up possession of the property, or be ousted from possession, in order to recover on the contract. In *Marshall* v. *Caldwell*, 41 Cal. 611, the grantor assumed to have title to the whole tract of land, while, as a matter of fact, he owned but one-half, and the grantor was not permitted to say that he sold less than the whole title to the land, and upon the discovery by the vendee that the vendor had not what he contracted to convey the vendee could rescind the contract. In the case at bar the contract falls for want of subject matter, and the vendee is not required to surrender possession of the property before he can maintain an action for the recovery of the purchase money. (*McCracken* v. *City of San Francisco*, 16 Cal. 593; *Herzo* v. *City of San Francisco*, 33 Cal. 134.)

PEMBERTON, C. J.—The question for this court to determine is whether or not the answer in this case states facts sufficient to constitute a defense to the action. The answer admits the material allegations in the complaint, and seeks, in a measure, to state facts in avoidance. After pleading *in extenso* the proceedings in the land department, and the contest and decision therein, in relation to the land mentioned in the pleadings, the appellant seeks in this case to retry the facts

upon which the case was tried in said land department, and to attack the judgment of the secretary of the interior on the respondent's appeal in said controversy.

We are of the opinion that the decision of the secretary of the interior pleaded in this case is final and conclusive until reversed in a direct proceeding for that purpose, and cannot be collaterally attacked in this action. In speaking of the decisions of the land department in such cases, in *Steel* v. *Smelting Co.*, 106 U. S. 447, Mr. Justice Field, delivering the opinion of the court, says:

"In *Johnson* v. *Towsley*, 13 Wall. 72, the effect of the action of that department was the subject of special consideration; and the court applied the general doctrine 'that when the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive upon all others'; and said, speaking by Mr. Justice Miller: 'That the action of the land office in issuing a patent for any of the public land subject to sale by pre-emption, or otherwise, is conclusive of the legal title must be admitted under the principle above stated; and in all courts and in all forms of judicial proceedings where this title must control, either by reason of the limited powers of the court or the essential character of the proceeding, no inquiry can be permitted into the circumstances under which it was obtained.'

"In *French* v. *Fyan* a patent had been issued to the state of Missouri for swamp and overflowed land, under the act of September 28, 1850, chapter 84. In an action of ejectment by a party claiming title under a grant to a railroad company, which would have carried the title if the land were not swamp and overflowed, parol testimony was offered to prove that it was not land of that character, and thus to impeach the validity of the patent. The court below held that the patent concluded the question, and rejected the testimony. The case being brought here, the ruling was sustained. This court, speaking through Mr. Justice Miller, said: 'We are of opinion that in this action at law it would be a departure from sound principle, and contrary to well-considered judgments in this court and in others of high authority, to permit the validity

of the patent to the state to be subjected to the test of the verdict of a jury on such oral testimony as might be brought before it.   It would be substituting the jury, or the court sitting as a jury, for the tribunal which Congress had provided to determine the question, and would be making a patent of the United States a cheap and unstable reliance as a title for lands which it purported to convey.'   (93 U. S. 169, 172.)

"In *Quinby* v. *Conlan* (decided at the last term) we said: 'It would lead to endless litigation and be fruitful of evil if a supervisory power were vested in the courts over the action of the numerous officers of the land department, on mere questions of fact presented for their determination.   It is only when those officers have misconstrued the law applicable to the case, as established before the department, and thus have denied to parties rights which, upon a correct construction, would have been conceded to them, or where misrepresentations and fraud have been practiced, necessarily affecting their judgment, that the courts can, *in a proper proceeding*, interfere and refuse to give effect to their action.   On this subject we have repeatedly and with emphasis expressed our opinion, and the matter should be deemed settled.'   (104 U. S. 420, 426. See, also, *Vance* v. *Burbank*, 101 U. S. 514.) . . . . So with a patent for land of the United States, which is the result of the judgment, upon the right of the patentee by that department of the government to which the alienation of the public lands is confided, the remedy of the aggrieved party must be sought by him in a court of equity if he possess such an equitable right to the premises as would give him the title if the patent were out of the way.   If he occupy, with respect to the land, no such position as this, he can only apply to the officers of the government to take measures in its name to vacate the patent or limit its operation."   (See *Silver Bow Mining and Milling Co.* v. *Clark*, 5 Mont. 378.)   There seems to be no conflict in the authorities on this point.

The appellant insists that it complied with its contract by executing and delivering to respondent its deed to the land in accordance with the terms of its contract of sale.   The appellant's contract required it to make and deliver a deed to the respondent, and stipulated that " the said deed shall convey the

said premises to the original purchaser or purchasers, or, at the option of the said party of the first part, to the lawful and duly appointed assigns of such purchaser or purchasers." The appellant contracted to deliver to the purchaser of the land not merely a deed in legal form, but such a deed as would convey the title to said land.

In section 414, Waterman's Specific Performance of Contracts, we find the doctrine to be stated thus: "As a general rule, it makes but little difference what the precise terms of the contract are, whether the vendor agrees to make title, or a good title, or to make a deed or a warranty deed, if it appears that he is negotiating to sell at a sound price, to be paid or part paid at the conveyance. In such cases, usually, the vendor, without a nice examination of words, is understood to agree to furnish a good title, and the vendee cannot be put off with merely a good deed. . . . . An agreement to give a 'good deed' is not simply a promise to execute a deed in legal form with proper warranty, but a deed good and sufficient both in form and substance to convey a valid title to the land." And see authorities cited in note to this section.

Did the appellant execute and deliver to respondent such a deed as conveyed the title to the land it contracted to deed? We think not. By appellant's own showing the land department had decided that it had no title, and, as a matter of course, it did not convey, and could not convey, any title to the land by the deed it executed and delivered to respondent.

Nor do we think that the position assumed by appellant, that respondent, having accepted the deed from appellant, was compelled to wait until he was ousted, and then sue on the covenants of the deed, is tenable. The respondent got nothing by the deed from appellant. When it was determined by the proper tribunal, as is the case here, that appellant had no title to the land, and could not comply with its contract to convey the title, then and there was a breach of its contract that authorized respondent to sue, without being ousted or surrendering possession of the land or deed. (*Marshall* v. *Caldwell*, 41 Cal. 611; *Stone* v. *Fowle*, 22 Pick. 166.) We are of the opinion that the answer did not state facts sufficient to constitute a defense.

The order of the court sustaining the demurrer to the answer was correct, and the judgment for the respondent is therefore affirmed.

*Affirmed.*

HARWOOD and DE WITT, JJ., concur.