[No. 3752.]

NIPPEL v. FORKER ET AL.

1. WATER RIGHTS — PUBLIC LANDS — EASEMENTS—STATUTORY CONSTRUCTION.

Under sections 2339 and 2340, Revised Statutes of the United States, recognizing water rights that have accrued and become vested by local customs and laws, and confirming the right of way of ditches and canals that have been constructed through public lands for the utilization of such water rights, and directing that all patents shall be subject to any vested water rights, or rights to ditches and reservoirs used in connection with them, a party is not entitled to an easement over any public land for a reservoir used in connection with a water right until he has first acquired a vested and accrued water right.

2. SAME—RESERVOIR SITES.

The approval by the secretary of the interior of a map of a reservoir site filed under the provisions of an act of congress of March 3, 1891, gives such reservoir a right of way only over such lands as were vacant and unappropriated at the time of the approval of the map. The locator of such a reservoir acquired no right of way over lands located and for which the government had issued a final receiver's receipt prior to the approval of the reservoir site.

*Appeal from Court of Appeals.*

Messrs. THOMPSON, PERKINS & THOMPSON and Messrs. C. E. & F. HERRINGTON, for appellant.

Mr. EDWARD T. TAYLOR, for appellees.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

This action was decided in favor of the defendants below

(the appellees here) by the district court of Garfield county, and its judgment was affirmed by the court of appeals, whose opinion is reported in 9 Colorado Appeals, 106. The action relating to a freehold, in the sense of the term as employed in our court of appeals act, our jurisdiction has been properly invoked by the plaintiff below, the appellant in the court of appeals, to review the judgment of the latter tribunal.

The pleadings give a tolerably clear notion of the nature of the controversy, which, we are constrained to say, appellant's original brief does not materially tend to elucidate. The conceded facts, and as found by the trial court, which the evidence supports, may thus be stated:

The land in controversy, originally part of the Ute Reservation, is situate in Spring valley, Garfield county, Colorado. This valley is about a mile wide lying in a basin on the mesa near the town of Glenwood Springs. It is comparatively level, sloping to the westward, being drained at the west end by a deep ravine called Red cañon. Near the lower end and above the head of the cañon there is a slight elevation of the land, about eight feet high at the highest point.

William E. Forker made the first settlement in this valley in July, 1881, long before the government survey, filing upon a 160 acre tract as a pre-emption, and continuously occupied and cultivated it until November, 1888, when he sold his possessory rights to one Graham, who continued in the possession and cultivation of the tract for about four years, when he sold his possessory rights only to the appellee; George H. Forker, who continuously thereafter occupied and cultivated the tract until the present time. In November, 1884, E. P. Gibson, the deceased husband of the appellee Tillie Gibson, settled in the valley and located under the pre-emption laws a quarter section of land adjoining that of Forker. At this time the land had not been surveyed, and it was not thrown open for filing until April, 1885, on which day William E. Forker and E. P. Gibson made their pre-emption declaratory statements for their respective claims, and surrounded both tracts with a good substantial fence,

and the same have remained thus inclosed from that time until the present.

In August, 1885, the survey of this township was suspended by order of the commissioner of the general land office on account of an erroneous survey, and it remained suspended for nearly eight years, or until June 29, 1893; Gibson, Forker and the successors of their possessory rights in the mean time continuing the occupation and cultivation of their respective claims.

In October, 1887, Gibson died, and his widow continued to occupy what was formerly his pre-emption claim and cultivated the same, intending to file upon it as a pre-emption in her own right as soon as she could do so under the rules and regulations of the land department. This she did on the 29th of June, 1893, and on October 7, 1893, proved up on the land, and obtained the receiver's receipt therefor. George H. Forker, being in the possession of his tract, filed on it August 7, 1893, and on February 12, 1894, proved up and got a receipt from the receiver of the land office.

In order to draw off from these two tracts of land the water from melting snow and natural drainage that flowed, and stood, upon them, the occupants in 1882 jointly dug a ditch through the elevated portion at the lower end of the valley, by means of which such water was carried, ultimately, down the cañon.

In April, 1889, while these two tracts of enclosed land were in the possession and occupancy of the respective claimants, Edward Nippel, the plaintiff, began the construction of, or selected a site for, a reservoir upon public lands of the United States lying in the valley west of the land and ditch claimed by the defendants, for the purpose of impounding water to use for irrigating agricultural crops on lands owned, or to be acquired, by him lying farther down the valley. He prepared a statement and a map of this reservoir and its accompanying ditches, which he filed with the county clerk and recorder of Garfield county, and apparently proceeded as if seeking to acquire a priority of right to the use of water for purposes of irrigation under the state statutes applicable thereto.

The reservoir, as originally planned, was wholly upon the unoccupied public domain, and covered about four or five acres, and in no wise interfered with the defendants' claims. In August, 1889, Nippel conceived the idea of enlarging his reservoir, and prepared and signed a notice not verified, but acknowledged before a notary public, claiming therein the right to use for reservoir purposes several thousand acres of the unsurveyed public domain in Spring valley, including the lands claimed by these defendants.

We do not understand from the record that, as a matter of fact, he enlarged his reservoir to cover the lands described, but it seems that he did spend some money in running a ditch to draw the water from it, but if he made a beneficial application of the water through his ditch, and if so, to what extent, the evidence in this record fails to show it.

After the passage of the act of congress of March 3, 1891, in regard to right of way for ditches, reservoirs, etc., on the public domain, Nippel attempted to perfect his rights under its provisions, and, in pursuance of such intention, prepared a map and statement of his reservoir and ditches in which his claims are fully set out. Therein he declares that he makes the filing in order to get the benefit of the act of 1891, and he also claims the benefits of sections 2339 and 2340, Revised Statutes of the United States. He filed this map and statement in the local United States land office at Glenwood Springs on August 11, 1893, and the same was approved by the secretary of the interior October 18, 1894, subject, however, to the right of way of the Glenwood High Line Rail-road, and *all other valid existing rights.*

At the time Nippel began the construction of his small reservoir, the defendants notified him not to interfere with their enclosed land, and until a short time before the beginning of this suit none of his acts caused any injury to it. Shortly before the beginning of this action, by enlarging, or raising the dam of his reservoir, the plaintiff caused the water from it to be set back through their ditch and cover a number of acres of land claimed by these defendants, and they thereupon cut the

dam, and did other acts, so that the water thus backed up on their lands was allowed to pass off, and the plaintiff thereupon brought this action to enjoin the defendants from further like interference with his reservoir, which they threatened. In the separate answers were cross-complaints asking affirmative relief restraining the plaintiff from any acts in connection with his reservoir which would cause the water therefrom to cover defendants' lands.

1. Very much of the argument of both parties here has been upon propositions of law not germane to the real questions involved under the facts of the case. It is unquestionably true that a settler upon the public domain who has taken steps under the pre-emption law to acquire title to public land, acquires no vested rights as against the United States prior to his full compliance with the laws relating to its disposition and the payment of the purchase price of the land; but it is equally true that one who, in good faith, goes upon the public land and seeks to obtain title under the public land laws has, as against a subsequent claimant, certain rights which are entitled to protection. What these rights are, or the extent of them, we need not determine. Appellant's contentions in this respect may be conceded, for they are not at all material. It is clear that the district court and the court of appeals were right in their decision in favor of the defendants, even if the plaintiff had a right to locate his reservoir upon the unsurveyed public lands in this township.

Considerable stress is laid by counsel for appellant upon an alleged vested and accrued right to the use of water for irrigation superior to any right of defendants, but such a claim has no place in this action. If the appellant has rights of this character senior to the appellees, they have not been infringed by the latter, so far as this record shows, and no issues respecting them have been determined.

Section 2339, Revised Statutes of the United States, is a recognition by congress of water rights that have become vested and accrued and acknowledged by the local customs and laws, and it contains, also, a confirmation of the right of

way of ditches and canals that have been constructed through public lands for .the utilization of such water rights. Section 2340 directs that all patents allowed shall be subject to any vested water rights, or rights to ditches and reservoirs used in connection with them.

Even if the issues raised that question, there is no proof of any vested or accrued water right in the plaintiff acquired under, or recognized by, section 2339. He therefore cannot, under these sections, maintain his claim to this reservoir, for he has established no vested water right in connection with which to predicate it. As it is only the right to, or the right of way for, such ditches and reservoirs as are used in connection with a vested water right that the owner of the latter can assert, unless he first acquires a vested and accrued water right, he is not entitled to an easement over any public lands for a reservoir used in connection therewith.

Nippel's title, therefore, in so far as it is based upon either one of the foregoing sections, having failed, the further inquiry is whether it has been otherwise established. He could not, under the state statutes, acquire a reservoir site on the public lands of the United States. To say the least, if he could, this record fails to show that he did. It is clear to our minds from the entire record that whatever rights, if any he has, are derived from acts of congress passed after the enactment of the sections of the Revised Statutes already considered. Those called to our attention by the appellant upon which, in part, at least, his rights are said to depend, are the acts of congress of October 2, 1888 (Supp. to Rev. Stats. U. S. 626; 25 U. S. Stats. at Large, 526) and the act of March 3, 1891 (Supp. to Rev. Stats. U. S. 946; 26 U. S. Stats. at Large, 1101, *et seq.*). Paragraph four of the former act carries an appropriation for the purpose of investigating the extent to which the arid region of the United States can be redeemed by irrigation and provides for the segregation of irrigable land in such region, and for the selection of sites for reservoirs necessary for the storage and utilization of water for irrigation. The section further provides that all

lands which may, after the passage of the act, be designated or selected by the United States surveys as sites for reservoirs, etc., shall be reserved from sale, and shall not, after the passage of the act, be subject to settlement until further provision is made therefor by law. It would seem that the appellant in some way seeks to justify his selection of the reservoir site by invoking the provisions of this section. It nowhere appears, however, that the land chosen by him for his reservoir was ever selected or segregated by the United States surveys for reservoir sites; and were it not for the approval by the secretary of the interior, which hereafter will be referred to, of the appellant's map and statement relating to this reservoir site, which, it might be contended, was tantamount to a designation and selection by the land department of the land for that purpose, we might well hold that plaintiff's claim cannot be sustained under the act. We prefer, however, not to base our decision upon this point, inasmuch as it can be put upon more satisfactory grounds.

Conceding, therefore, for the purposes of this opinion, that the selection by the plaintiff of his reservoir site was under the provisions of the act of 1888, and further conceding, if that were necessary, that the rights depended, in whole or in part, upon section 2339 of the Revised Statutes of the United States, still the claimant has failed to show that his rights under either or both are superior to those of the defendants. The portion of the act of 1888 reserving lands for reservoir sites was, it is true, repealed by the act of congress of October 30, 1890 (Supp. Rev. Stats. 791; 26 U. S. Stats. at Large, 391). The repealing act, however, contained a saving clause as to reservoir sites theretofore located, and so, for the purposes of this case, we might treat the plaintiff's site as within the saving clause if, prior to the date of the act of 1890, it was located in the legal sense of that term.

On August 11, 1893, proceeding under the provisions of the act of March 3, 1891, the appellant first filed in the local land office a map of his reservoir. It was sent to Washington and was rejected for nonconformity with the act, and

sent back for correction, and was refiled in the local land office on June 28, 1894, but was not approved by the secretary of the interior until October 18, 1894. By the express provisions of section 18 of the act, it is only a right of way through the public lands and reservations of the United States that is granted for ditches, canals and reservoirs, and to the extent, for reservoirs, of the ground occupied by the waters thereof. And the rights there given are conditioned upon the approval by the secretary of the interior of a map and plat of the proposed reservoir filed by the claimant. Moreover section 19 provides that upon its approval by the secretary of the interior the same is noted upon the plats in his office, and "*thereafter* all such lands over which such rights of way shall pass shall be disposed of subject to such right of way." That congress is vested with supreme authority in disposing of the public lands and has the power to prescribe the terms and conditions on which its grants take effect, is not questioned here. Indeed, the plaintiff himself relies upon the act that prescribes the conditions under which his rights are to be secured. This approval did not occur until October, 1894, and, as will be seen from the foregoing statement, the land in question was resurveyed and thrown open to settlement on June 29, 1893, and Mrs. Gibson made her filing on that day, and proved up, paid the purchase price, and got a receiver's receipt on October 7, 1893, and Forker made his filing on August 7, 1893, and paid the purchase price and got his receiver's receipt on February 12, 1894. For the purposes of this case, these receiver's receipts are equivalent to patents from the United States.

It therefore appears that not until long after the rights of these defendants were vested by the receipt of patents, or their equivalents, did the right of the plaintiff to this reservoir accure; and since the right of way for plaintiff's reservoir is, by the express provisions of the act, granted only over such lands as were disposed of *after* the approval of the map, it is altogether clear that he acquired no right of way over lands of these defendants, because they were disposed of before his map was approved.

But if the law were that, upon the approval and acceptance of the map by the secretary of the interior, the rights of the owner of the reservoir, under the doctrine of relation, date from the beginning of his work of construction thereof, still, under the decision of the secretary of the interior of a protest filed by these defendants against the acceptance and allowance of the plaintiff's reservoir, its location carries only the right of way over *vacant* public lands.   It was said in that decision by Secretary Smith, in his letter to the commissioner of the general land office (19 L. D. Int. Dept. 304) : " In this connection it must be remembered that the approval by this department of the map of location of a reservoir site filed under the provisions of the act of March 3, 1891, carries only the right of way over the vacant public lands covered by such location, and in no wise affects other tracks."   We understand, from numerous citations in the briefs, that such has been the uniform ruling of the land department.   To cite all the cases would be useless, as this single decision relating to this very reservoir is sufficient for our present purpose.   For so long as it stands and is not set aside in some proper direct proceeding, it is conclusive upon the parties concerned, and cannot be collaterally attacked.   Nippel certainly acquiesced in it.   He claims his rights as the result of an approval of his map by the secretary of the interior, and introduces the approved map as evidence of his rights.   He cannot avail himself of that part of the decision favorable to him, and reject that which is unfavorable.   The decision was that his right of way covers only vacant public lands.   The lands claimed by defendants were not vacant, and so are not affected.   This ruling accords with our construction of the act, and is an adjudication of the special tribunal designated by congress to pass upon questions arising out of the disposition of public lands.   *Colburn v. N. P. Ry. Co.*, 13 Mont. 476, and cases cited.

In the concluding portion of the decision the secretary of the interior says : " Inasmuch as the applicant Nippel has complied with the regulations of the department in filing the map, the department cannot inquire into the merits of the

protest made by Gibson and others claiming to be injuriously affected by it, but must refer the parties to the courts for their proper remedy."

It thus appears from this decision of the secretary on the appeal of these defendants that the merits of their controversy were not determined. And it further appears that, as their rights to the lands were vested prior to the completion of the acts of location of plaintiff's reservoir, he acquired no right of way for it over their lands.

It is true that patents, if drafted in accordance with the regulations of the department under the acts of congress, will, when issued, contain a clause subjecting the lands therein conveyed to all rights of way for reservoirs theretofore located; yet, as we have seen, plaintiff's reservoir was not *located* in the sense that right of way therefor over the public lands attached, until the map was approved, and since defendants' lands were acquired before plaintiff's location was perfected, it follows that they are not burdened with the right of way for his reservoir.

The judgment of the court of appeals being in accord with our own conclusion, it should be affirmed, and it is so ordered.

*Affirmed.*