STATE EX REL. WASHINGTON PHOSPHATE & SILVER CO., RESPONDENT, v. STATE BOARD OF LAND COMMISSIONERS ET AL., APPELLANTS.

(No. 8,303.)

(Submitted April 7, 1942. Decided April 28, 1942.)

[124 Pac. (2d) 1001.]

*Mr. John W. Bonner,* Attorney General, and *Mr. Howard M. Gullickson,* First Assistant Attorney General, for Appellants, submitted a brief; *Mr. Gullickson* argued the cause orally.

*Messrs. Gunn, Rasch & Gunn,* and *Messrs. Collier & Collier,* of the Bar of Spokane, Washington, for Respondent, submitted a brief; *Mr. Carl Rasch* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

January 23, 1923, M. J. Grady, acting for himself and others, bought from the state of Montana 607.6 acres of school land located in Granite county. The purchase price was $6,076, fifteen per cent. payable in cash and the balance in twenty equal annual installments, with interest on the deferred payments at the rate of five per cent. per annum. The certificate of purchase was issued to Grady in due course and was by him thereafter assigned to the relator, a corporation of the state of Washington. Prior to June 7, 1940, the contract having been in effect over seventeen years, relator had paid to the state a total of $8,202.01 on the purchase price, $3,158.93 being for interest on deferred payments and $5,043.08 on the principal.

On June 7, 1940, the relator was advised by the State Land Office that the state had no title to 320 acres of the land covered by the certificate of purchase which it held, and the state could not pass title to the purchaser. It appears that the federal government had "withdrawn for phosphate reserve No. 12" 320 acres of the land in 1912, a fact of which the state board had not theretofore been advised, and which it did not discover until it applied for patent a short time prior to its letter of advice referred to.

The matter was contested by the state land office but when the case came before the Secretary of the Interior for final

action, it was decided adversely to the state and the board was advised by the Interior Department that the case was closed. The department, however, offered to issue a phosphate lease to the state's purchaser, which the relator did not accept.

In the letter of the state land office of June 7th to the relator, the commissioner suggested to the relator two possible courses of procedure: (1) Cancel the contract as to the part of the land withdrawn by the federal government and use the credit to pay the balance due on the other portion in full, with a refund to the relator of the remainder; or (2) cancel the entire contract and have refunded "all payments that had been made." Such proposals were made by the commissioner subject to the approval by the state land board.

March 3, 1941, the relator elected to accept the second proposal, advised the state land board to that effect, and demanded the refund of all payments made in the amount $8,202.01. The state refunded the amount paid on the principal of the purchase price but refused to refund the interest. The Washington concern petitioned the district court for an alternative writ of mandate directing the state board to refund the additional amount paid for interest or show cause why it should not do so. The writ was issued, served and returned. The board appeared by motion to quash, admitting all matters of fact alleged in the petition, but denying petitioner's right to have the money refunded as a matter of law. The motion was argued, taken under advisement, and later overruled. December 31, 1941, the court entered judgment in favor of the relator, directing the board to refund the amount demanded and made its writ of mandate permanent, and, on further application of the relator allowed, over the objection of the Attorney General, costs and attorneys' fees to relator in the sum of $265.66. The appeal is from the judgment.

The single assignment of error is on the court's overruling the motion to quash the alternative writ.

The state board contends in effect that equity has been done by the state in refunding the amount that had been paid on the

principal of the purchase price of the land, and that the use of the land for more than seventeen years balances the interest payments made, the refund of which is now claimed by the relator.

In the letter of the land office of June 7, 1940, heretofore referred to, it expresses the assumption that the relator had purchased the land for its phosphate values, and it likewise further assumed that "no extensive development" had been made by the relator. These assumptions seem to be accepted as true by both parties, as nothing appears to the contrary. These assumptions of the commissioner of the land office strongly indicate that the relator merely had the bare right of possession without profit.

There is no evidence before us relative to any income received by the relator from the land, and the state does not attempt to show any but relies for its defense upon our statement in the case of *State ex rel. Boorman* v. *State Board of Land Commissioners,* 109 Mont. 127, 94 Pac. (2d) 201, 205. In that case the state land board sold to Boorman 160 acres of land located within three miles of the city of Cut Bank, contrary to the provisions of sections 1 and 2 of Article XVII of our Constitution. That land was classified and sold by the board as agricultural land and obviously was bought by the vendee for agricultural purposes. The provisions of the Constitution prohibit the sale of state land located within three miles of a city or town except in five-acre tracts. The land was improperly classified and illegally sold. The state being unable to give title to the land, the relator in that case sued to recover the purchase price *with interest.* We directed the amount paid on the purchase price be refunded in accordance with the provisions of section 1805.116, Revised Codes, but denied the claim of the purchaser for interest, stating in our opinion that "petitioners had the use of the land." The claim for interest in that case was not submitted in a manner that enabled the court to consider it stripped of other considerations. Boormans admitted having received income from the land but neither pleaded nor proved

any specific amount. They also alleged having paid taxes on the equity they had acquired in the land by reason of the payments made (sec. 1805.92, Rev. Codes), but made no claim for any refund of the taxes, expressing a willingness to offset the taxes paid against the income received.

Having before us no proof as to the amount of the income received, nor the taxes paid by the relator, failure to furnish such proof being the fault of the relator, the court assumed that the income was sufficient to offset the interest and denied the interest claim.

We express no opinion as to the right of the purchaser of ▮▮▮▮ state land to recover from the state interest on the purchase price, taxes paid on the land, offset by income from the land when the sale was void by reason of the fault of the state. The only demand the relator makes here is the return of the amount paid on the purchase price, and determination of his right under that demand is all that is properly before us.

The state board is in error in assuming that interest paid by a purchaser of state land on deferred installments of the purchase price is in the same category as the "interest" referred to in the demand of the relator in the *Boorman Case*. There the relators demanded all the money refunded that they had paid to the state, and in addition interest for the use of the money for the time the state had had possession thereof. In the case at bar the relator merely asks that the $8,202.01 it has paid to the state be refunded. It is out that amount of money and received nothing in return; it waives its possible right to interest for the use of the money while the state possessed it. To bring the demands of the relator to a parity with the demand of the petitioners in the *Boorman Case* we would have to add to the demand of the relator here a further demand for interest on the $8,202.01 for the time the state had possession thereof.

We have carefully reviewed the following cases cited to support relator's demands: *White* v. *Harvey,* 175 Iowa 213, 157 N. W. 152; *Mann* v. *Campbell,* 198 Ky. 812, 250 S. W. 110; *Colburn* v. *Northern Pac. Ry. Co.,* 13 Mont. 476, 34 Pac. 1017;

*Lamb* v. *Jones,* 87 Tex. 485, 29 S. W. 647; *Goodwin* v. *Simpson,* (Tex. Civ. App.) 136 S. W. 1190; *Pevey* v. *Jones,* 71 Miss. 647, 16 So. 252, 42 Am. Dec. 381; *Ankeny* v. *Clark,* 148 U. S. 345, 13 Sup. Ct. 617, 37 L. Ed. 475; 27 R. C. L. 627. These authorities, taken in connection with our Code section 1805.116, clearly sustain the judgment of the trial court.

The right of relator to repudiate the contract was mentioned ▇ but not emphasized at the hearing. We think there can be no question as to that right. (66 C. J. 803; 2 Black on Rescission & Cancellation, 436; *Ankeny* v. *Clark,* supra; *Alpha Portland Cement Co.* v. *Shirk,* 7 Cir., 227 Fed. 966; *Kares* v. *Covell,* 180 Mass. 206, 62 N. E. 244, 91 Am. St. Rep. 271.)

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ERICKSON and ANDERSON concur.