TRAPHAGEN ET AL., APPELLANTS, v. KIRK, RESPONDENT.

(No. 1,910.)

(Submitted May 31, 1904. Decided June 22, 1904.)

*Mining Claims—Public Land—Railroad Grants—Character of Land—Conclusiveness—Contract of Sale—Consideration—Adequacy—Specific Performance.*

1. Under Act of Congress February 26, 1895, Chap. 136, Section 7, 28 Stat. 683, providing that no patent or other conveyance of title shall be delivered to the Northern Pacific Railroad Company for any lands in Montana and Idaho, under the congressional grant to such railroad, until the lands shall have been examined and classified as non-mineral by mineral land commissioners provided for, a patent to such railroad company for land classified by such commissioners as non-mineral is conclusive as to the character of the land, in the absence of fraud, imposition or mistake.

2. In order to make a valid mining location under Rev. St. U. S. Section 2319, providing that all mineral deposits in mineral lands belonging to the United States, and the lands containing the same, shall be open to entry, etc., surface ground, including the vein or lode, must be appropriated, and such surface ground must be the property of the United States.

3. Where an entire section of public land had been patented by the government to the Northern Pacific Railroad Company, which had conveyed the same to defendant, an entry thereon by complainants for the purpose of making a mining location without defendant's consent was a trespass on defendant's rights, and was therefore ineffectual for the purpose of initiating a valid mining claim.

4.  Where complainants' entry on defendant's land for the purpose of locating
    a mining claim was wholly ineffectual as against defendant for that pur-
    pose, a contract by which complainants agreed to transfer to defendant an
    undivided one-third interest in the lead or lode, in consideration of defend-
    ant's transfer to plaintiffs of an undivided two-thirds interest therein,
    together with the necessary amount of real estate covered by the location,
    etc., in settlement of the rights of the parties, without litigation, was not
    based on a sufficient consideration to support a suit for specific perform-
    ance under Civil Code, Section 4417, providing that specific performance
    cannot be enforced against a person unless he has received an "adequate"
    consideration for the contract.

*Appeal from District Court, Gallatin County; Wm. L. Hol-loway, Judge.*

BILL by F. W. Traphagen and another against Thomas Kirk. From a decree in favor of defendant, plaintiffs appeal. Affirmed.

*Messrs. Hartman & Hartman,* for Appellants.

It was not necessary for the plaintiff to allege that it had no remedy at law, it being presumed that it could not obtain adequate relief in pecuniary compensation and the contract being one which either of the parties could have compelled the other to perform. (*Ide v. Leiser,* 10 Mont. 5 on p. 15; Civil Code, Secs. 4413, 4412, 4411 and 4410.)

It was not necessary to state that the contract sued on was in writing, or to set out the writing in the complaint, that being a matter of proof and not of allegation. (Bliss, Code Pleading, 3d Ed., Secs. 312, 354; *Sweetland v. Barnett,* 4 Mont. 217.)

It is a matter of common knowledge that the Act of Congress of July 2, 1864, Chap. 217, 13 U. S. Stat. at page 365, whereby the original grant of the land in question was made to the Northern Pacific Railroad Company, and its amendatory acts, specially reserves from the operation of the grant all minerals found in the land thereby granted. And this is true whether the mineral was known or unknown at the time the grant became operative. (*Barden v. Northern Pac. R. R.,* 154 U. S. 208; *Northern Pac. Ry. Co. v. Soderberg,* 188 U. S. 526;

*Northern Pac. R. R. Co.* v. *Sanders,* 166 U. S. 620; *Adams* v. *Henderson,* 168 U. S. 581.)

A compromise of doubtful and conflicting claims is a sufficient consideration for a promise voluntarily made not induced by fraud, though the claims were illegal or without foundation. (*Mason* v. *Wilson,* 43 Ark. 172; *Castle* v. *Ross,* 33 Ill. 245; *Honeyman* v. *Jarvis,* 79 Ill. 318; *Knotts* v. *Preble,* 50 Ill. 226; *Taylor* v. *Patrick,* 4 Ky. 168; *Grandin* v. *Grandin,* 49 N. J. Law, 508, 60 Am. Rep. 642; *White* v. *Hoyt,* 73 N. Y. 505.)

A compromise of doubtful claims is always a sufficient consideration to uphold the contract made on such compromise. (*Allen* v. *Prater,* 30 Ala. 458; *Bozeman* v. *Rushing,* 51 Ala. 329; *Finley* v. *Funk,* 35 Kan. 668; *O'Keson* v. *Barclay,* 2 Pen. & W. 531; *Logan* v. *Matthews,* 6 Pa. St. 417; *Williams* v. *Poppleton,* 3 Ore. 139; *Knowles* v. *Knowles,* 21 N. E. Rep. 196.)

Mutual and concurrent promises afford sufficient legal consideration for the support of each other. (*Funk* v. *Hough,* 29 Ill. 145; *Boise* v. *Vincent,* 24 Iowa, 387; *Babcock* v. *Wilson,* 17 Me. 372; *Whitehead* v. *Potter,* 26 N. Car. 257; *Nott* v. *Johnson,* 7 Ohio St. 270; *Bank* v. *Sabin,* 48 Vt. 239; *Hutt* v. *Hickey* (N. H.), 28 Atl. 456; *Breslin* v. *Brown,* 24 Ohio St. 565; *Morris* v. *Lagerfelt,* 103 Ala. 608; *Wilson* v. *Samuels,* 100 Cal. 514; *Fulton* v. *Smith,* 27 Ga. 413; *Humhprey* v. *Haskell,* 4 Allen, 497; *Coleman* v. *Eyre,* 45 N. Y. 38; *Young* v. *Snyder,* 2 Phila. 315; *In re Ralston,* 172 Pa. St. 104; *Society* v. *Campbell,* 13 L. R. A. 601; *Reed* v. *Reed,* 56 Vt. 492.)

The discovery of the valuable vein of corundum by appellants and their location of the same as a mining claim, and their conveyance of the information of the value of the claim, and of its existence, to the respondent, was a sufficient consideration for his contract. (*Reed* v. *Golden,* 28 Kan. 632; *McLaughlin* v. *Barnard,* 2 E. D. Smith, 372.)

Where a contract, required by the statute to be in writing, is not in writing, but it has been partly performed, by one of the parties, so as to put him in a situation which would be a fraud

upon him unless the contract be executed, or where a consideration has not been expressed, but one of the parties has executed the contract or partly executed it to his disadvantage, such a contract should be performed, and if performance be refused, specific performance should be decreed by a court of equity. (Code of Civil Procedure, Sec. 3275; Civil Code, Sec. 2342; *Arguello* v. *Edinger,* 10 Cal. 150; Pomeroy on Specific Performance of Contracts, Secs. 103, 104, 105, 106 and 107.)

*Mr. John A. Luce,* for Respondent.

The grant to the Northern Pacific Railroad, Act of Congress, July 2, 1864, Chap. 217, 13 Statutes at Large, 365, among other things, provided: "That all mineral lands be and the same are hereby excluded from the operations of this Act." Prior to the decision in the case of *Barden* v. *Northern Pacific Railroad,* 154 U. S. 208, the Supreme Court of the United States had uniformly construed the different Acts of Congress, making grants in aid of the construction of railroads to be grants *in praesenti,* and that when the general route was definitely fixed, and the sections granted became susceptible of identification, the title then attached as of the date of the grant. (*Wisconsin Central Railroad Co.* v. *Price County,* 133 U. S. 496-507; *Schulenberg* v. *Harriman,* 21 Wallace, 44; *Leavenworth, Lawrence & Galveston Railroad* v. *United States,* 92 U. S. 733; *Missouri, Kansas, etc. Railway* v. *Kansas Pacific Railway,* 97 U. S. 491; *Railroad Company* v. *Baldwin,* 103 U. S. 426; *St. Paul & Pacific Railroad* v. *Northern Pacific Railroad,* 139 U. S. 1-5; *Deseret Salt Co.* v. *Tarpey,* 142 U. S. 241-247.)

Until the decision in the *Barden Case,* it was the uniform rule in the Department of the Interior and of the Supreme Court of the United States, as announced in numerous decisions, that the exceptions of mineral lands in those grants and in the statutes authorizing the acquiring of title under townsite, pre-emption, homestead and other Acts, applied only to such mines as were *known* to exist at the time title passed. (*Davis' Administrator* v. *Wiebold,* 139 U. S. 507-524, 527.)

The *Barden Case* changed the rule above cited only in so far as it affected the time of the identification of the lands as mineral or non-mineral, and holds that the lands are subject to exploration and inquiry as to the mineral or non-mineral character at any time prior to the issuance of patent. (154 U. S. 319, 327.) Under the decision in the *Barden Case* and under the authority granted to the Secretary of the Interior and the Mineral Land Commissioners by the Act of February 28, 1895, the classification of the land now owned by respondent as non-mineral land fixed the character of said land and upon the issuance of the patent this land passed absolutely to the Northern Pacific Railway Company. The decision of the Land Department became and was absolutely final and conclusive against collateral attack, and this decision was not open to rebuttal in an action at law. (*Smelting Company* v. *Kemp*, 104 U. S. 636-640-641; *Steele* v. *Smelting Co.*, 106 U. S. 447-451; *Heath* v. *Wallace*, 138 U. S. 573-585; *Knight* v. *Land Association*, 142 U. S. 161-178; 154 U. S. p. 330, 341; *Moore* v. *Smaw*, 17 Cal. 226; *Deffeback* v. *Hawke*, 115 U. S. 392, 406; *Casey* v. *Thieviege*, 19 Mont. 341; *Colorado C. & I. Co.* v. *United States*, 123 U. S. 307-328.)

The patent was evidence that the patentee was entitled to the land and passed the exclusive title to it. Upon the issuance of the patent by the government the land ceased to be land of the United States. (*United States* v. *Schutz*, 102 U. S. 378-396; *Johnson* v. *Tousley*, 13 Wallace, 72; *Hoofnagle* v. *Anderson*, 7 Wheat. 212; *Boggs* v. *Merced Mining Co.*, 14 Cal. 279-363; *Bagnell* v. *Broderick*, 12 Peters, 436; *Greene* v. *Liter*, 8 Cranch, 230; *Minter* v. *Curmmelin*, 18 How. 87-89; *Smelting Co.* v. *Kemp*, 104 U. S. 636-640-641; *Steele* v. *Smelting Co.*, 106 U. S. 447; *French* v. *Fyan*, 93 U. S. 169-172; *Wilcox* v. *Jackson*, 13 Peters, 498, on page 513; *Whitney* v. *Morrow*, 112 U. S. 693, 695.)

The attempt by the appellants to enter upon land owned, occupied and possessed by respondent gave the appellants no

interest in this land which they could convey to any person or which could be an adequate consideration for any contract whatever.   This exact point was passed upon in *Mayger* v. *Cruse,* 5 Mont. 485, Opin. 494.

Specific performance cannot be enforced against a party to a contract if he has not received an adequate consideration for the contract.   (Civil Code, Sec. 4417; *Mayger* v. *Cruse,* 5 Mont. 485, Opin. 495; *Ward* v. *Yorba,* 123 Cal. 447, 56 Pac. 58; *Morrill* v. *Everson,* 19 Pac. 190.)

If the land sought to be conveyed to the appellants belongs to the United States, then the respondent had no title and has no title which he can convey to the appellants, and therefore the court would not decree a specific performance.   (*Williams* v. *Mansell,* 19 Fla. 546; *Northrop* v. *Boone,* 66 Ill. 368; 20 Ency. Pleading and Practice, 451, and cases cited.)   If, however, as has been shown, the title passed to the Northern Pacific Railroad, and the deed from the railroad to respondent exempted the minerals, then if the minerals belong to the Northern Pacific Railroad, respondent has no right thereto which he could convey or which the court would compel him to convey to the appellants.   Nor could the appellants have acquired any right, title or interest, by their said location, in or to the minerals belonging to the Northern Pacific Railroad.

It is also insisted by counsel for appellants:  (1) That a compromise of a doubtful claim is a sufficient consideration for a contract, and (2) That mutual and concurrent promises are sufficient consideration to support each other.   In urging these two propositions, counsel has confused the difference between the consideration for an ordinary contract and that required where a specific performance is sought for the sale of land.   In the latter kind of contracts, it is not enough that the consideration be a valuable one, but it must be adequate, fair and reasonable in all respects.   (*Seymour* v. *Delancey,* 6 Johns. Ch. 222; *Dunlap* v. *Kelsey,* 5 Cal. 181; *Bruck* v. *Tucker,* 42 Cal. 346, on pages 353 and 354; *Winter* v. *Goebner,* 30 Pac. 51-52, af-

firmed 40 Pac. 570; *Mayger* v. *Cruse,* 5 Mont. 485, 495; Civil
Code, Secs. 4417, 4419; *Ferguson* v. *Blackwell,* 58 Pac. 647;
*Cathcart* v. *Robinson,* 5 Pet. 264; *Ducie* v. *Ford,* 8 Mont. 233-
239, C. S. 138 U. S. 587.)

It is the universal rule that the description of the land sought
to be conveyed must be given with absolute certainty. (20 Ency.
Pleading and Practice, 449, and cases cited; *Ferris* v. *Irving,*
28 Cal. 645; *Day* v. *Griffith,* 15 Iowa, 104; *Jordan* v. *Deaton,*
23 Ark. 704; *Shelton* v. *Church's Admr's,* 10 Mo. 774; *Wiegert*
v. *Franck,* 56 Mich. 200; 22 Am. & Eng. Ency. of Law, 963-
968; *Tetford* v. *Trimble,* 87 Mo. 226.) It is the universal rule
that a contract must be certain in all its terms or it will not be
enforced. (*Stanton* v. *Singleton,* 59 Pac. 146; *Whitehill* v.
*Lowe,* 37 Pac. 589; *Reed* v. *Lowe,* 29 Pac. 740; *Winter* v.
*Goebner,* 30 Pac. 51.) The granting or refusing of a decree
of specific performance rests in the sound discretion of the court.
(*Reid* v. *Mix,* 66 Pac. 1021; *Mayger* v. *Cruse,* 5 Mont. 485.)

MR. COMMISSIONER CLAYBERG prepared the follow-
ing opinion for the court:

This is an appeal from a judgment against plaintiffs. The
action was brought for the specific performance of a contract
for the conveyance of land. Defendant filed a demurrer to the
complaint, which was sustained by the court, and, plaintiffs hav-
ing elected to stand upon their complaint, judgment followed
for defendant.

The cause of action set forth in the complaint is very pecu-
liar, and the allegations of the complaint are, briefly, as follows:
That on and prior to February 23, 1900, the defendant was the
owner, by conveyance from the Northern Pacific Railway Com-
pany, of section 23, township 3 south, of range 3 east, Gallatin
county, and in the possession thereof; that he was also the owner
of the right to use the waters of Elk creek in connection with
said land; that plaintiffs, prior to February 23, 1900, discov-
ered upon said land "a vein or lode of corundum- bearing rock,"

and believing said land to be unoccupied land of the United
States and said vein or lode open to location, duly located a
claim "upon and along said vein" upon and across said land;
that the United States, in its grant of this land to the Northern
Pacific Railway Company, reserved and exempted therefrom
"all minerals found in the soil of said real estate," and that the
railway company made the same reservation in its conveyance
to defendant; that prior to June 30, 1897, the proper mineral
land commissioners of the United States reported this land as
nonmineral, and classified it as such, whereupon the railway
company applied to the Commissioner of the General Land
Office for leave to enter it, which application was approved, and
on July 12, 1897, a patent was issued to the railway company,
which reserved "all minerals contained in the soil" of said land,
and that afterward the railroad company conveyed to the de-
fendant, making the same reservation; that on or about Febru-
ary 23, 1900, plaintiffs informed defendant that they had dis-
covered this vein, and had located and staked a mining claim
upon said land, and that the claim, if properly worked, would
be of great value; that by reason of the grant to the defendant
and his predecessors, and the reservations therein contained,
the plaintiffs and defendant were in doubt as to their respective
legal rights in and to the aforesaid vein; that it was recognized
by the respective parties that such rights could only be deter-
mined by litigation, which might be further complicated by the
assertion of the rights of the government and the railway com-
pany, respectively; that for the purpose of avoiding such litiga-
tion and preventing costs, expenses and delays, and for the pur-
pose of amicably settling their differences, and in consideration
of the discovery and location of this claim, and of the mutual
promises and agreements between the parties, it was agreed that
plaintiffs should transfer to the defendant an undivided one-
third interest in said lead or lode, and that defendant should
transfer to plaintiffs an undivided two-thirds interest in said
lead or lode, together with the necessary amount of real estate
covered by said location to enable the lode to be operated, and

also a right to the use of the waters of Elk creek necessary to the mining and treatment of ores and the operation of said mine; that the respective transfers should be mutually made within a reasonable time from the date of said agreement; that afterwards, and prior to the commencement of the suit, and prior to the refusal of defendant to make such transfer, plaintiffs, relying upon the agreement of defendant as aforesaid, in good faith expended large sums of money in an attempt to interest capital in the operation, exploration and development of said lode or lead; that thereafter, and prior to the commencement of the suit, plaintiffs offered to convey to said defendant an undivided one-third interest in said lode or claim, and demanded that defendant should comply with the conditions of the agreement on his part, and convey to the plaintiffs an undivided two-thirds interest therein, but that defendant has failed and refused so to do.

The complaint then sets forth the particular description of the land in question so to be conveyed, in the following language: "An undivided two-thirds (2-3) interest in and to a strip of land not exceeding 300 feet in width, running diagonally across the upper portion of section 23, in Tp. 3 south, of R. 3 east, in the county of Gallatin, state of Montana, at the place on said section where a certain lead or lode of corundum-bearing rock is contained and situate, said strip of land to conform to the meandering of said vein or lode of corundum-bearing rock, together with the necessary ingress and egress to the same for the purpose of mining, milling and marketing the ore therefrom, and otherwise prospecting and operating said lode, together with the right to such use of the water right of said defendant, consisting of the right to the use of the waters of said branch of Elk creek, in said county and state, as may be necessary for the proper operation, treatment, mining, milling and concentration of the ores of said lode, extending in a north-easterly and southwesterly direction from the principal point of discovery and development thereon of said lode to the limits of said section."

The demurrer was based upon the grounds that the complaint did not state facts sufficient to constitute a cause of action, and that it was ambiguous, uncertain and unintelligible in certain respects set forth in the demurrer.

The only question necessary to consider is, does the complaint state facts sufficient to constitute a cause of action? In order to arrive at a correct conclusion as to the alleged rights of plaintiff in or to any of the land in question, we must consider and determine the character and legal effect of the patent to the land, under which defendant is alleged to have acquired ownership. To this consideration a brief review of the source of title seems important.

Defendant is alleged to claim ownership under a patent issued by the United States to the Northern Pacific Railway Company. In 1864 Congress passed an Act granting to the Northern Pacific Railroad Company "every alternate section of land not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile on each side of the railway line as said company may adopt through territories of the United States," extending from Lake Superior to Puget Sound. (Act July 2, 1864, c. 217, 13 Stat. 365.) At the next session Congress amended this grant by providing "that all mineral lands be, and the same are, hereby excluded from the operation of this Act." (Res. Jan. 30, 1865, No. 10, 13 Stat. 567.)

It is apparent from these provisions of the grant (which are all that are material to the questions herein involved) that mineral land did not pass by the grant. The Supreme Court of the United States have always held that the grant was, *in praesenti,* floating in its character until the line of the railroad was definitely located, when it attached to each alternate section mentioned in the grant, and became fixed in its character. When the land was surveyed by the government the particular sections mentioned in the grant were specifically designated, and the grant then took effect from its date. Under this decision the railway company insisted that the character of the land, as to

whether mineral or not, must be determined as of date of the grant, and, if it was not then known to be mineral, it passed by the grant. This condition seems to have been recognized by the Supreme Court of the United States until it had for consideration the case of *Barden* v. *N. P. Ry. Co.*, 154 U. S. 288, 14 Sup. Ct. 1030, 38 L. Ed. 992, wherein it was decided that all mineral land except iron and coal, whether known or unknown, was excluded from the grant. Subsequent to this decision Congress passed an Act "to provide for the examination and classification of certain lands in the states of Montana and Idaho." (Act Feb. 26, 1895, c. 136, 28 Stat. 683.) Section 7 of this Act provides: "No patent or other conveyance or title shall be issued or delivered to the Northern Pacific Railroad Company for any lands in such districts until such lands shall have been examined and classified as non-mineral." Under the provisions of this Act, mineral land commissioners were appointed by the government to examine and classify, as to their mineral character, all lands, under the aforesaid grant, claimed by the Northern Pacific Railroad Company in the above-mentioned states. The complaint alleges full compliance with this Act, and the issue of patent by the United States to the Northern Pacific Railway Company, the successor in interest to the Northern Pacific Railroad Company, the grantee named in the original grant.

Now, what is the effect of this patent? Congress has provided for the disposition of various classes of public lands, and has authorized the officers of the Land Department to ascertain the character of such land and issue patent therefor. In the absence of fraud, imposition or mistake, the determination of that department as to the character of land is conclusive. (*Barden* v. *N. P. Ry. Co.*, *supra*, and cases cited.) No fraud, imposition or mistake has been alleged, and, the patent having been issued, it is conclusive that the land in question is non-mineral in its character.

Plaintiffs' alleged rights were originated by the discovery and location of a mineral vein within the limits of the land al-

leged to have been patented to defendant's predecessor in interest. Section 2319, Rev. St. U. S. (U. S. Comp. St. 1901, p. 1424), provides: "All valuable mineral deposits in mineral lands belonging to the United States, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and purchase, and the lands in which they are contained, to occupation and purchase." Under this section, in order to make a location, surface ground, including the vein or lode, must be appropriated, and such surface ground must belong to the United States. (*State ex rel. Anaconda Copper Mining Co.* v. *District Court,* 25 Mont. 504, 65 Pac. 1020, and cases cited.) Under plaintiffs' own allegations, none of the surface ground of the land in question was owned by the United States, it having been patented to the Northern Pacific Railway Company. There can be no doubt, therefore, that plaintiffs, by their attempted location of a mineral claim upon the land in question, acquired no rights at all. According to their own showing the "minerals in the soil" was the only thing remaining in the government. This court knows of no statute of the United States which provides for the acquirement of "mineral in the soil," aside from the mineral statute above quoted, which requires the location of certain surface ground, including the minerals sought to be obtained. Plaintiffs do not claim to be the successors in interest of the United States in and to the "minerals in the soil," otherwise than by the making of a mining location under the laws of the United States.

There is still another objection to the validity of plaintiffs' claimed location. The surface of the entire section No. 23 had been patented by the government to the Northern Pacific Railway Company, and conveyed to defendant. Under this conveyance the defendant was entitled to the exclusive possession of all the surface ground of such section. Any entry by any other person for any purpose, without defendant's consent, was a trespass upon the rights of the defendant. It has been uniformly held by the Supreme Court of the United States that a valid mining claim cannot be initiated by the commission of a

trespass. (*Clipper M. Co.* v. *Eli M. Co.,* 24 Sup. Ct. 632, 48 L. Ed.—, and cases cited.) We are therefore clearly of the opinion that the pretented location of a mining claim by the plaintiffs was absolutely of no force or effect.

But again, the contract of which specific performance is sought is without adequate consideration; the only thing of value to be surrendered by plaintiffs is an alleged interest in a certain vein. We have seen that they had no such interest, and therefore could not surrender or convey the same or any part thereof.

But it is claimed by plaintiffs that the information given by them to defendant of the existence of this vein in his land was sufficient consideration. Of what value would such information be to defendant unless plaintiffs could also furnish to him the means of acquiring the subject-matter disclosed? By their own showing, the minerals contained in such vein were reserved by the United States. We do not consider the validity of this alleged reservation by the government (which is extremely doubtful: *Silver Bow M. & M. Co.* v. *Clarke et al.,* 5 Mont. 378, 5 Pac. 570), because, if it is void, all "minerals in the soil" passed by patent, and plaintiffs show no interest therein.

Plaintiffs also allege that the settlement of the matters in dispute between the parties without litigation was sufficient consideration. While in some instances this might be sufficient to support some contracts, we are clearly of opinion that the allegations of plaintiffs in this case do not disclose such an adequate consideration as is necessary to support a suit for specific performance. (Section 4417, Civil Code; *Mayger* v. *Cruse,* 5 Mont. 485, 6 Pac. 333; *Finlen* v. *Heinze,* 28 Mont. 548, 73 Pac. 123.)

Neither do we believe that the complaint contains a sufficiently specific description of the property involved to warrant any decree.

We advise that the judgment appealed from be affirmed.

PER *CURIAM.*—For the reasons stated in the foregoing opinion, the judgment is affirmed.

MR. JUSTICE HOLLOWAY, being disqualified, takes no part in this decision.