82  506·
85  258

WELLINGTON R. BURT v. WILLIAM C. BUSCH.

*Public lands—Surveys—Evidence.*

1. The question of the location of a starting point for a surveyor is one of fact for the jury, and not of theory to be determined finally upon the opinion of surveyors or experts.

    So *held*, where, after a surveyor had testified that he could not and did not find an original quarter post when making a survey, he was asked whether, in his judgment, the quarter post had or had never been located and established under the original government survey; which question is held to call for an opinion, and not for any fact within the knowledge of the witness.

2. An act of Congress directed a resurvey of certain townships, and stated that they had never been properly surveyed. Prior to the passage of the act, certain swamp lands in one of the townships had been selected by the State under a congressional grant, and had been sold and patented by the State according to the alleged imperfect survey. And it *is* held that the purchaser had acquired vested rights according to said survey, which could not be disturbed by the act of Congress ordering the resurvey, and that said act is no evidence that the original survey was improper.

Error to Saginaw. (Gage, J.) Submitted on briefs July 1, 1890. Decided October 10, 1890.

Trover. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Brooks & Conway,* for appellant, contended:

1. If the lands were not in fact surveyed at the time of purchase, the purchaser must take subject to the fundamental rule of government survey that it is not the lines reported, but the lines actually run, which vest in the patentee the area included in the lines; citing *Conn v. Penn,* Pet. C. C. 496.

2. The question was whether a survey had actually been made fifty years ago. It was difficult to prove the negative, except by the opinion of experts. The witness stated that he could find no trace or indication of such survey, but the significance of this could not be understood by a jury, and the question calling for his judgment on the subject was proper.

3. The recital in the act of Congress is evidence of the fact that the township had never been properly surveyed; citing 1 Greenl. Ev. § 491; and if a survey in fact had been made, and a proper resurvey demonstrated a shortage, such shortage, in the absence of any evidence to control, would have to be prorated over the whole line where it occurred; citing *Jones v. Kimble,* 19 Wis. 429; *Quinnin v. Reimers,* 46 Mich. 605.

*Tarsney & Weadock,* for plaintiff, contended for the doctrine stated in the opinion.

LONG, J. Plaintiff brought suit in trover in the circuit court for the county of Saginaw to recover from the defendant the value of 63,000 feet of pine saw-logs, of the stumpage value of six dollars per thousand feet board measure, which had been removed by the defendant from a strip of land containing about four acres. Each party to this controversy claims to own this strip of land. The controversy grows out of a difference between two government surveys, one of which was made in 1839, and the other in 1877. On the trial in the court below the court advised the jury, in substance, that the title to the land was in the plaintiff, and, it being conceded that the 63,-000 feet of logs were taken off the land by defendant, left the only question of fact for their determination as to the value of the logs taken. The jury found a ver-

dict in favor of the plaintiff, and, judgment being entered thereon, defendant brings error.

The plaintiff on the trial traced his title to this piece of land by virtue of a patent from the State of Michigan bearing date May 7, 1869, conveying to him the N. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of section 3, town 18 N., range 1 W., and other lands, his claim being that the strip in dispute belongs to him as a portion of the above description according to the government survey thereof made in 1839. The defendant claims title through a patent from the State of Michigan to one Edmund Hall, dated October 6, 1871, and sundry mesne conveyances, conveying the S. E. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of said section 3. That is, the controversy arises over the true boundary line between the N. $\frac{1}{2}$ and the S. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ of that section.

The main question arising upon this record is which of these two surveys governs. It is claimed by the plaintiff that, if the survey of 1839 controls, the plaintiff is entitled to recover, but he concedes that, if the survey made in 1877 controls, the plaintiff is not entitled to recover. It is insisted, however, that the survey of 1839 should control, and that the plaintiff is entitled to recover, for the reason that he bought with reference to the survey of 1839, before defendant's grantor bought the description of land he now claims, and that the defendant took his description subject to plaintiff's rights. On the other hand, the claim of the defendant is that the interior lines of the township were never actually surveyed, until ordered by Congress in 1877, and that plaintiff purchased with reference to the established rule that any deficiency must fall upon the north quarter of that quarter section; also that, even if the interior lines of the township were surveyed in 1839, there was evidence of a shortage on the north and south lines,

which shortage should be prorated over the whole line; and that there was no evidence showing the extent of such shortage, and that, therefore, the plaintiff had failed to prove that he owned the four acres, or, if any part, how much thereof, and that there was no evidence showing on what part of the four acres the timber was cut.

Each party to the controversy purchased his respective descriptions of land with reference to the survey made in 1839. This was the only survey made of that township up to 1877, some six years after the purchase by Edmund Hall, under whose patent the defendant claims. These lands are State swamp lands, and were granted to the State by the general government under an act of Congress of September 28, 1850. The State selected these lands under such grant, and adopted the surveys on file in the Surveyor General's office as the basis upon which it would receive the lands under the grant. Laws of 1851, p. 322 (How. Stat. § 5381 *et seq*). It was also provided by that act that these lands should be sold in the same legal subdivisions in which they were received by the State, and the Commissioner of the Land-office was authorized to procure all necessary books, maps, or plats of such lands as required. The field-notes of these surveys, made in 1839 by the general government, are all contained in the record here, together with the map made by the Surveyor General in that year. Both these patents refer to this survey. On February 16, 1877, however, Congress passed an act authorizing a resurvey of this township, and also of township No. 19, as follows:

"That the Commissioner of the General Land-office is hereby directed to cause to be surveyed towns numbered eighteen and nineteen north, of range one west, in the State of Michigan, these towns having never been properly surveyed; and that there be appropriated out of any money in the treasury, not otherwise appropriated, a sufficient sum to pay the expense thereof, not exceeding

twenty-five hundred dollars." 19 U. S. Stat. at Large, p. 231.

It is claimed by defendant that, under this survey, the line of his land is ascertained to be further north than as indicated by the field-notes of the survey of 1839, and that the four-acre strip, from which the timber in controversy was taken, is within the description of his land under this survey of 1877.

On the trial, the plaintiff introduced in evidence the field-notes, map, and survey made by the general government in 1839. He also introduced the deposition of Mr. Isaac H. Leavenworth, who testified that he was a civil engineer and surveyor, and that in the year 1882 he made a survey at the request of the defendant for the purpose of locating the lines around the S. E. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of section 3 of that township. In this survey he followed the field-notes of the government survey of 1877. He also testified that in 1885 he made a survey of these lands on section 3, at the request of the plaintiff, following the field-notes, map, and survey made by the general government in 1839. The defendant introduced in evidence on the trial the field-notes, map, and survey made by the general government under the act of Congress of February 16, 1877. From the testimony of Mr. Leavenworth it appears that in making the survey of 1885, at the request of the plaintiff, the only lines of the survey of 1839 which he could find were the township lines, and no lines of this survey of 1839 could be found around section three, except the township lines; the township lines, however, were easily traced; that, taking these township lines as found by the survey of 1839 as a basis, the four-acre strip fell within the description of the plaintiff's lands. It also appears that in the survey made for the defendant, and at his request, Mr. Leavenworth took the field-notes, map, and survey made in 1877, and

that, taking these field-notes, map, etc., made in 1877, the four-acre strip fell within the description of the defendant's land. Mr. Leavenworth testified also that he could not say that the south-east corner of section 3 was not first surveyed out in 1839, and the corner post located and established. All he could say about it was that he could not find it, and did not find it when he made the survey for the defendant in 1882. Defendant's counsel thereupon asked the witness the following question:

" *Q.* Is it your judgment that the quarter post had or had never been located and established under the survey of 1839,—south-east quarter post?"

This was objected to by plaintiff's counsel, and ruled out by the court. This ruling constitutes the defendant's first assignment of error. There was no error in this ruling. It called for an opinion, and not for any fact within the knowledge of the witness. Boundary lines are not to be established or disturbed by the mere opinion of surveyors. They may detail facts, but, when they have no knowledge of facts, their opinions or conjectures cannot control to establish or disturb boundaries. The government survey was made in 1839, and the first survey of Mr. Leavenworth was made in 1882, some 43 years afterwards, and the witness did not pretend to have any means of judging whether or not this quarter post was ever established by any former survey. The question of the location of a starting point for a surveyor is one of fact for the jury, and not one of theory to be determined finally upon the opinion of surveyors or experts. *Stewart v. Carleton,* 31 Mich. 270; *Gregory v. Knight,* 50 Id. 63 (14 N. W. Rep. 700); *Lemon v. Railway Co.,* 59 Id. 623 (26 N. W. Rep. 793).

The other assignments of error relate to the charge of the court in taking the case from the jury, and directing verdict for the plaintiff. The only remaining ques-

tion, therefore, is whether the survey of 1839 controls. It is contended by defendant:

1. That the recital in the act of Congress of February 16, 1877, is evidence of the fact that township No. 18 had never been properly surveyed.

2. That if a survey in fact had been made, and a proper resurvey demonstrated a shortage, such shortage, in the absence of any evidence to control, would have to be pro-rated over the whole line where the shortage occurred.

3. That there was evidence showing a shortage on the north and south lines.

There is no evidence upon this record to show that these particular descriptions of land were not properly surveyed in 1839. The act of Congress in 1877 is not evidence of an improper survey of these lands. Long prior to this act the State of Michigan had made selections of these swamp lands, and had issued its patents to purchasers, describing the lands according to the government surveys, and selling them in the government sub-divisions, having reference to the surveys, maps, and field-notes of 1839. The rights of the plaintiff had become vested in accordance with this survey at the time of the issue of the patent to Edmund Hall, and, as well stated by plaintiff's counsel, if this act of Congress of 1877 was permitted to change Mr. Burt's title, the next Congress can pass an act, and say the survey of 1877 was void, and thus purchasers under that survey be divested of rights acquired thereunder. It was shown by the witness Leavenworth, the only surveyor called by either party, that he found the north and south township lines as surveyed and marked out by the survey of 1839. It is not disputed but that, according to this survey, the line between these lands is where the plaintiff claims, and, even if this survey of 1839 is inaccurate, the plaintiff having purchased in accordance with that survey, his rights have become vested. And the subsequent act of Congress did

not lessen or disturb the rights thus acquired.    *Baker v. McArthur*, 54 Mich. 139 (19 N. W. Rep. 923);   *Chapman v. Polack*, 70 Cal. 487 (11 Pac. Rep. 764).

The court was not in error in stating to the jury that the field-notes made in 1839 should govern between the parties, and that the land upon which the timber was cut belonged to the plaintiff.   The other questions raised do not become important.

The judgment must be affirmed, with costs.

The other Justices concurred.