THOMAS, APPELLANT, *v.* HORST ET AL., RESPONDENTS.

(No. 3,851.)

(Submitted December 3, 1917. Decided December 17, 1917.)

[169 Pac. 731.]

*Public Lands—Northern Pacific Land Grant—Mining Claims— Mineral Land Commission—Classification of Lands.*

Public Lands—Mineral Land Commission—Effect of Classification of Lands.
1. *Held,* that the determination of the mineral land commission created by the Act of Congress of February 26, 1895 (28 Stats. 683, Chap. 131), that certain lands situated within the territorial limits of the Northern Pacific land grant were nonmineral, was final and conclusive, in the absence of fraud, even though subsequent development disclosed that the classification was erroneous.

Same—Conclusiveness of Decision of Land Department.
2. The allegation in plaintiff's complaint that patent to land, claimed by him under mineral locations and by defendant railway company as part of the land granted to it by the federal government, had issued to defendant, was tantamount to an allegation that the land had been duly classified as nonmineral under the Act of Congress of 1895 above, and the classification approved by the secretary of the interior before the mineral claims were located; hence, inasmuch as

For authorities passing on the question as to location of mining claim on railroad aid grant, see note in 7 L. R. A. (n. s.) 801.

the decision of the Land Department thus made is conclusive upon the courts in the absence of fraud, and no fraud was charged, dismissal of the complaint was proper.

Same—Mineral Land Commission—Manner of Determining Character of Land.

3. The presence of a patented quartz lode mining claim in the vicinity of the land claimed by plaintiff under mineral locations was not alone sufficient to show that the land claimed by him was also mineral; this fact could, under section 3 of the Act of 1895 above, properly be taken into consideration by the mineral land commissioners in determining the character of the land, but did not compel them to classify it as mineral.

[As to the determination of mineral or nonmineral character of public land, see note in **Ann. Cas. 1912A, 1302.**]

*Appeal from District Court, Silver Bow County; J. B. Mc-Clernan, Judge.*

SUIT by William E. Thomas against Carl H. Horst, as administrator of the estate of Barbara H. Horst, deceased, and others. Judgment for defendants, and plaintiff appeals. Affirmed.

*Mr. Edwin M. Lamb* and *Mr. John T. Andrew, Jr.,* for Appellant, submitted a brief; *Mr. Lamb* argued the cause orally.

We have no legal title—this has been repeatedly held. The only remedy is, as said by the supreme court of the United States, "the remedy of the aggrieved party must be sought by him in a court of equity." (*Steel* v. *St. Louis Smelting etc. Co.,* 106 U. S. 447, 27 L. Ed. 229, 1 Sup. Ct. Rep. 389.) The situation is this: The mineral claimant, plaintiff, made a discovery of minerals upon the public domain, lands excluded by the Act of Congress of 1864, from being acquired by the railroad company, immediately surrounded by patented mining claims, which the law say "distinctly characterizes them as mineral land," and the railroad company afterward, clandestinely, in so far as this plaintiff is concerned, applied for and received a patent to lands, which the law says it should not obtain. Having thus obtained it, we believe that it was by mistake, and such a mistake as entitles us to ask relief in this court of equity. (*Hedrick* v. *Atchison etc. R. R.,* 167 U. S. 673, 42 L. Ed. 320, 17 Sup. Ct. Rep. 922; *Van Wyck* v. *Knevals,* 106 U. S. 360, 27 L. Ed. 204, 1 Sup. Ct.

Rep. 336; *Duluth & Iron Range R. R. Co.* v. *Roy*, 173 U. S. 587, 43 L. Ed. 822, 19 Sup. Ct. Rep. 549.)

The Land Department, as in *Burfenning* v. *Chicago etc. Ry. Co.*, 163 U. S. 321, 41 L. Ed. 175, 16 Sup. Ct. Rep. 1018, acted in disregard of an established and recorded fact shown by their own records when they issued the patent to the railroad company, and at the very time their records disclosed that these grounds were mineral, hence plaintiff is entitled to relief. (*Lytle* v. *Arkansas*, 22 How. (U. S.) 193, 16 L. Ed. 306; *Garland* v. *Wynn*, 20 How. (U. S.) 8, 15 L. Ed. 805; *Lindsay* v. *Hawes*, 2 Black (U. S.), 559, 17 L. Ed. 265; *Johnson* v. *Towsley*, 80 U. S. 72, 20 L. Ed. 485; *Johnson* v. *Towsley*, 80 U. S. 72, 20 L. Ed. 487, 488; *Burke* v. *Southern P. R. Co.*, 234 U. S. 669, 58 L. Ed. 1527, 1549, 34 Sup. Ct. Rep. 907.)

The supreme court of California had under consideration a case identical with this and they reviewed many of the cases dealing with the subject matter. In this California case the mining claim was located six months before the patent was issued to the railroad company, and they hold that the mineral claimant is entitled to have the title quieted in him, and that the railroad company and its successors acquired no rights under the patent. (*Van Ness* v. *Rooney*, 160 Cal. 131, 116 Pac. 392.)

*Messrs. Gunn, Rasch & Hall, Mr. Wm. Meyer* and *Mr. Frank W. Haskins,* for Respondents, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

We cite the following cases sustaining the proposition that it will be presumed that the Act of Congress in question has been fully complied with: *St. Louis Smelting etc. Co.* v. *Kemp*, 104 U. S. 636, 20 L. Ed. 875; *Deseret Salt Co.* v. *Tarpey*, 142 U. S. 241, 35 L. Ed. 999, 12 Sup. Ct. Rep. 158; *Lake Superior etc. Co.* v. *Cunningham*, 155 U. S. 354, 39 L. Ed. 183, 15 Sup. Ct. Rep. 103; *Shaw* v. *Kellogg*, 170 U. S. 312, 42 L. Ed. 1050, 18 Sup. Ct. Rep. 632; *Creede & C. C. Mining etc. Co.* v. *Uinta Tunnel Min. etc. Co.*, 196 U. S. 337, 49 L. Ed. 501, 25 Sup. Ct. Rep. 266.

As the presumption that the Act of Congress was fully complied with is not challenged by the complaint, the appellant will not now be heard to say that the land embraced within the mining claims in controversy is mineral land and excluded from the grant made to the railroad company. The patent has the effect of a judgment, and the courts are not authorized to review the findings of the Land Department on issues of fact where the party seeking such review had notice and an opportunity to present his claim to the Land Department. There is a clear distinction between cases where the proceedings before the Land Department were *ex parte,* and cases involving proceedings before the Land Department where notice and an opportunity for a hearing were provided for in the legislation of Congress. (*Ross* v. *Stewart,* 227 U. S. 530, 57 L. Ed. 626, 33 Sup. Ct. Rep. 345.)

It is unnecessary to discuss the cases cited in the brief for appellant, further than to call attention to the fact that in none of them was it sought to have the decision of a question of fact by the Land Department, where there had been notice and an opportunity for a hearing before said department, reviewed.

While it has been decided many times by the supreme court of the United States and other courts that where, through fraud or mistake, a patent is issued to one party when it should have been issued to another, the other party may have the patentee declared a trustee of the legal title for him, it is essential to such relief that the appellant should show that, except for the error, fraud or imposition, he would have received the patent. (*Meyendorf* v. *Frohner,* 3 Mont. 282; *Murray* v. *Montana L. & M. Co.,* 25 Mont. 14, 63 Pac. 719; *Gebo* v. *Clarke Fork Coal Min. Co.,* 30 Mont. 90, 75 Pac. 859; *Pierson* v. *Loveland,* 16 Idaho, 628, 102 Pac. 340.) It follows that, as the appellant has made no application for a patent and there has been no decision, either by the Land Department or by any court with reference to the validity of the locations made, he has not shown himself entitled to a patent, and consequently cannot have the respondents declared trustees of the legal title for him. (*Cosmos Ex-*

*ploration Co.* v. *Gray Eagle Oil Co.*, 190 U. S. 303, 47 L. Ed. 1064, 23 Sup. Ct. Rep. 692, 24 Sup. Ct. Rep. 860.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1905 and 1906 four quartz lode mining claims were located upon portions of lots 1 and 2, section 21, township 3 north, range 7 west, in Silver Bow county and within the Helena land district. Each of these lots is a fractional forty-acre legal subdivision. The land is within the territorial limits of the grant to the Northern Pacific Railroad Company and its successor, the Northern Pacific Railway Company, and in 1907 a patent was issued to the company for each of the two lots, including the land covered by these four mineral locations. The plaintiff is the successor of the original locators, and the defendants are the successors of the railway company. This suit was instituted to have the defendants declared to be trustees of the legal title to the ground covered by the mineral locations and to hold the same for the use and benefit of the plaintiff. In addition to the foregoing facts it is alleged in the complaint that plaintiff and his predecessors so far complied with the law that upon application plaintiff would receive a patent for each of his mining claims but for the fact that patent has already issued to the railway company for the same land. It is alleged that lots 1 and 2 are mineral in character, known to be such for forty years or more, and that in 1893 a patent was issued for the Homestake quartz lode mining claim located upon portions of these same two lots. It is further alleged that plaintiff and his predecessors have been in possession of these mining claims from the dates of their respective locations. The district court dismissed the complaint, and plaintiff appealed from the judgment.

It has been settled beyond controversy by decided cases too numerous to be cited: (1) That where patent has issued to one party when in equity and good conscience and by the laws enacted by the Congress upon the subject another should have received it, a court of equity will convert the holder of the legal

title into a trustee for the use and benefit of the true owner; (2) that the Land Department is a special tribunal created by law for the purpose of determining conflicting claims arising over the public land; (3) that a finding of fact by that tribunal is conclusive upon the courts, except for fraud or imposition which prevented the losing party from fully and fairly presenting his case or the officers of the tribunal from properly considering it; (4) that whether a particular parcel of land is mineral or nonmineral in character presents a question of fact dependent for its solution upon evidence *dehors* the record; (5) that, if the Land Department has jurisdiction, legal title passes when patent issues; (6) that, under Land Grant Act of July 2, 1864 (Chap. 217, 13 Stat. 365), patent to the Northern Pacific passes the legal title freed from the contingency of future discovery of minerals in the land conveyed; and (7) that a patent issued for land not open to entry under the Act by virtue of which it issued, is absolutely void.

The grant extending aid to the Northern Pacific conveyed certain odd-numbered sections, nonmineral in character, which were not reserved, sold or otherwise appropriated, and which were free from pre-emption or other claim or right at the date the line was definitely located. It is the contention of appellant that by reason of the mineral character of lots 1 and 2 they were never subject to the grant, and that in issuing patent for them the officers of the Land Department misapplied the law to existing facts, and that plaintiff is entitled to relief. It is not contended that any fraud or imposition was practiced or that the land was occupied at the time the line of road was definitely located, or that the land in dispute had been sold or otherwise appropriated, or that it was reserved, unless by the mineral reservation in the grant itself. Our investigation is narrowed to the inquiry: Does this complaint disclose that at the date patent issued to the Northern Pacific these lots were not subject to the grant by reason of their mineral character?

For thirty years succeeding the date of the grant there was no provision made for ascertaining the mineral or nonmineral

character of any tract within the limits of the grant, except by contest in the particular case between the railway company and a mineral claimant, and until the contest was finally determined and patent issued it was an open, controvertible question whether the particular land was nonmineral and subject to the [1] grant, or mineral and excepted from the grant. The Act of Congress approved February 26, 1895, provided for a classification of all lands within the grant in the Bozeman, Helena, Missoula, and Coeur d'Alene land districts, by a commission consisting of three members for each of these land districts. (28 Stats. at Large, 683.) The Act directed that the lands should be examined and then classified as mineral or nonmineral. Monthly each commission was required to file with the local land office its report in duplicate showing distinctly all lands classified as mineral and those classified as nonmineral. The register of the land office was required to publish notice of the classification, and anyone deeming himself aggrieved might file his protest against the acceptance of the classification and secure a hearing, in the nature of a contest, with the right of review on appeal to the General Land Office and the secretary of the interior. Section 6 of the Act provided that, as to the lands against the classification of which no protest was filed, the classification, when approved by the secretary of the interior, should be final except for fraud. In case protest was filed, the final ruling of the Land Department, after hearing, should determine the proper classification, and whenever any classification became final, the records of the general and local land offices were to be made to conform to such classification. Four years were allowed for the work, and the immediate effect of the Act was to suspend the issuance of patents to the railway company for lands situated in these land districts, until the classification was made and became final.

The Act contemplated a thorough examination and exploration of the lands to be classified. It commanded the commissioners to take into consideration the geological formation of adjacent lands, the presence or absence of mineral discoveries,

and the reasonable probabilities that the lands to be classified contained valuable mineral deposits because of their formation, location or general character. It was only after such examination as thus contemplated that a classification was authorized to be made. The proceeding was not *ex parte*. The United States and the Northern Pacific were the parties to the original grant, and the Act of February 26, 1895, was but supplementary to the granting Act. The government owning the land could dispose of it upon such terms as it saw fit, and, having granted certain lands, it reserved to itself the right to determine in its own way just what lands fell within the description of those conveyed. Each of these commissions was an agency of the government, through which it determined for itself just which legal subdivisions of these odd-numbered sections were non-mineral in character and subject to the grant, and which ones were mineral in character and excepted from the grant. It was free to fix any time it chose as the limit beyond which the controversy over the mineral or nonmineral character of these lands might not be waged, and it chose to make the classification when finally approved, conclusive except in case of fraud.

Prior to 1895, whenever the railway company applied for patent to lands by virtue of the grant, the Land Department was called upon to determine in the particular case whether the lands sought were nonmineral in character, and, having made a sufficient investigation its determination that the lands sought were nonmineral, became unassailable in all collateral proceedings except for fraud. But, instead of pursuing this policy of trying by piecemeal the question of the mineral or nonmineral character of these lands, the government provided in the Act of February 26, 1895, for one proceeding which should continue until the mineral or nonmineral character of every legal subdivision was determined; the entire proceeding resulting in a judgment of the Land Department that the lands classified as nonmineral were such in fact. To that proceeding the government and the railway company were made parties, but no one was foreclosed of any right. Every person, corporation, or com-

pany feeling aggrieved might intervene and have his interests, if any, protected. The mineral land commission was constituted a part of the Land Department, and all proceedings for the examination and classification of these lands were had and done by that department. The proceedings were in the nature of a contest in which all lands within the odd-numbered sections of the grant in these four land districts was the subject matter in dispute. If no third party intervened, the government and the railway company were the parties to the contest. If there was intervention, a special hearing was ordered for the determination of the third party claim, but in either event the proceeding culminated in a classification of the land which had the effect of a judgment of a special tribunal that the land was mineral or nonmineral, according as the evidence established the fact, and the question of fact thus found and established was not thereafter open to further litigation in any collateral proceeding except for fraud, even though subsequent development might disclose that some of the lands had been erroneously classified. Under the express terms of section 6 of the Act of 1895, there cannot be given any different effect to this blanket judgment than attached to the determination of the Land Department in a particular contest between the railway company and an adverse claimant under the laws in force prior to 1895.

In *Barden* v. *Northern Pac. R. Co.,* 154 U. S. 288, 38 L. Ed. 992, 14 Sup. Ct. Rep. 1030, decided prior to the enactment of the statute of February 26, 1895, it was held that the issuance of patent to the Northern Pacific for a particular tract of land under the Land Grant Act was a determination by the Land Department that the land was nonmineral in character, and in the absence of fraud such determination was conclusive upon the courts, without reference to the fact that mineral deposits might thereafter be discovered in the land. In other words, the patent set at rest for all time the question of the mineral or non-mineral character of the land. In our opinion, the classification under the Act of 1895 had the same legal effect. The classifica-

tion having been completed, the officers of the Land Department were not authorized or permitted thereafter to examine into the character of land for which patent was applied, but by reference to their records they determined from the classification made whether the particular land was mineral or nonmineral in character.

If lots 1 and 2 outside the limits of the Homestake claim were classified as nonmineral, and no protest was filed, or if protest was filed and, after hearing, was overruled, such classification, in the absence of fraud, became final, and settled for all time that the land was in fact nonmineral in character. Under these [2] circumstances, what consequences necessarily flow from the allegation in plaintiff's complaint that patent was issued to the Northern Pacific for the lands covered by the mineral location in lots 1 and 2?

Section 7 of the Act of February 26, 1895, provided: "That no patent or other evidence of title shall be issued or delivered to said Northern Pacific Railroad Company for any land in said land districts until such land shall have been examined and classified as nonmineral, as provided for in this Act, and such patent or other evidence of title shall only issue then to such land, if any, in said land districts as said company may be, by law and compliance therewith and by the said classification, entitled to," *etc.* (28 Stat. 686.)

It is the contention of respondents that the allegation that patent issued carries with it the necessary inference that the lands were examined by the mineral land commissioners for this district; that they were then classified as nonmineral; that the proper reports were filed, the required notice given; that either no protest was presented, or, if protest was presented, it was, after contest heard, overruled; that the classification became final; and that the plats and records had been made to disclose the facts long before these mining claims were located or patent issued to the railway company. The basis of this insistence is to be found in the language of section 7 above and in the decisions of the Supreme Court of the United States.

In *St. Louis Smelting & Refining Co.* v. *Kemp,* 104 U. S. 636, 26 L. Ed. 875, it is said: "The execution and record of the patent are the final acts of the officers of the government for the transfer of its title, and as they can be lawfully performed only after certain steps have been taken, that instrument, duly signed, countersigned and sealed, not merely operates to pass the title, but is in the nature of an official declaration by that branch of the government to which the alienation of the public lands, under the law, is intrusted, that all the requirements preliminary to its issue have been complied with. The presumptions thus attending it are not open to rebuttal in an action at law. It is this unassailable character which gives to it its chief, indeed, its only, value, as a means of quieting its possessor in the enjoyment of the lands it embraces."

If we indulge the presumption declared by the supreme court that the issuance of patent is in the nature of a judicial determination that every fact has been found which is necessary to entitle the patentee to the legal title to the land, the conclusion appears inevitable that the allegation in this complaint that patent issued to the Northern Pacific is tantamount to an allegation that the land in controversy was duly classified as nonmineral, and the classification approved before the mineral claims were located; and since the determination of the mineral or nonmineral character of the land presented a question of fact for decision by the Land Department, its judgment thereon is conclusive upon the courts in the absence of fraud.

Of course, if the mineral or nonmineral character of this land was open to investigation notwithstanding its classification, then the allegation in the complaint that it was and is mineral land is sufficient to show that the Land Department was without jurisdiction to convey it to the railway company; but, as we have observed before, if the classification did not finally determine the character of this land, the utmost that can be said of it is that it was an idle ceremony, and the Act of February 26, 1895, was a meaningless piece of legislation.

Counsel for appellant refers to the provision in section 3 of the Act of 1895 under which the patent to the Homestake claim [3] raised a presumption that lots 1 and 2 were mineral; but this provision is only one of numerous rules of evidence provided for the guidance of the mineral land commissioners. The fact that they found a patented mining claim upon portions of these lots only called upon them to begin their investigation of the character of the remaining portions, indulging a presumption that their investigation would disclose mineral deposits sufficiently valuable to justify exploitation. If, however, their examination convinced them that the remaining portions were nonmineral, the *prima facie* case was overcome at once, and their duty to classify them as nonmineral attached.

The cases relied upon by appellant announce the general rules which obtained prior to the Act of 1895 and subsequent to that date with respect to lands in districts other than those mentioned above; but they are not in point here, because in none of them had there been an adjudication as to the character of the land prior to application for patent, such as was afforded by the classification made in this instance.

We adopt the theory that the allegation in the complaint that patent issued to the Northern Pacific in 1907 necessarily implies that the land was classified as nonmineral, and is such in fact for all purposes of this case. Under this view plaintiff pleads himself out of court.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.