PITTSMONT COPPER CO., APPELLANT, *v.* VANINA, RESPONDENT.

(No. 5,475.)

(Submitted May 24, 1924.   Decided June 19, 1924.)

[227 Pac. 46.]

*Public Lands—Patent — Collateral Attack — Original Survey Controlling.*

Public Lands—Patent—Presumptions—Collateral Attack.

1.   A patent for public land is the highest possible evidence of title and upon its issuance by proper authority it is presumed that all precedent conditions, one of which is that the land has been surveyed, have been complied with, and such a patent is not open to collateral attack.

Same—Plats, Field-notes, *etc.*, Become Part of Patent.

2.   Where public land is granted by patent "according to the official plat of the survey of said lands returned to the general land office by the surveyor-general," the plat itself with all of its notes, lines, descriptions and landmarks becomes a part of it.

Same—Patent—Resurvey—Mistakes—Effect.

3.   After a survey of public land had been adopted by the Land Department, a plat made therefrom which was recognized by the government as correct and the land patented as indicated thereby and by the patentee sold to another, the fact that the draftsman in the surveyor-general's office made a mistake in the location of a corner in preparing the plat, not discovered until twenty-three years later on a resurvey, did not affect the rights of the patentee's grantee acquired long before the resurvey.

Same—Patent—Original Survey Controlling.

4.   Original surveys of public lands by the federal government, on the faith of which property rights have been acquired, control over surveys subsequently made by it which affect such rights.

*Appeal from District Court, Jefferson County; Lyman H. Bennett, Judge.*

ACTION by the Pittsmont Copper Company against Mose Vanina. Judgment for defendant and plaintiff appeals. Reversed and remanded, with directions to enter judgment in favor of plaintiff.

*Messrs. Kremer, Sanders & Kremer,* for Appellant, submitted a brief; *Mr. Louis P. Sanders* argued the cause orally.

A patent issued by the United States, regular on its face, cannot be assailed, impaired, impeached or set aside or the survey thereto attacked in a collateral proceeding, but only in a direct proceeding having this purpose in view. In an action where both parties allege ownership and wrongful ouster, one as against the other, which is the action now before the court, a patent is conclusive, and evidence to show its validity or asserted defects in the survey thereof is inadmissible. The character of proceeding that may be instituted to impeach, set aside or affect a patent, regular on its face, must be an equitable one brought directly, and not collaterally, for such purpose, and therein all grounds of invalidity, such as fraud, mistake, *etc.,* must be affirmatively plead and established by clear and indisputable evidence. (*United States* v. *Maxwell L. & G. Co.,* 121 U. S. 323, 90 L. Ed. 949, 7 Sup. Ct. Rep. 1015; *United States* v. *Reading,* 18 How. (U. S.) 1, 15 L. Ed. 291; *Simmons* v. *Wagner,* 101 U. S. 260, 25 L. Ed. 910; *Johnson* v. *Towsley,* 13 Wall. (U. S.) 72, 20 U. S. 485; *DeGuyer* v. *Banning,* 167 U. S. 723, 42 L. Ed. 340, 17 Sup. Ct. Rep. 937; *LeMarchel* v. *Teegarden,* 133 Fed. 826; *Steele* v. *St. Louis Smelting etc. Co.,* 106 U. S. 474, 27 L. Ed. 226, 1 Sup. Ct. Rep. 389; *Hoofnagle* v. *Anderson,* 7 Wheat. (U. S.) 212, 5 L. Ed. 437 [see, also, Rose's U. S. Notes]; *Quinn* v. *Donnelly,* 70 Cal. 597, 12 Pac. 469; *New York Central & Hudson Ry. Co.* v. *Aldridge,* 135 N. Y. 83, 17 L. R. A. 516, 32 N. E. 50; *Colburn* v. *Northern Pac. Ry. Co.,* 13 Mont. 467, 34 Pac. 1017; *Gebo* v. *Clark Fork Coal Co.,* 30 Mont. 87, 75 Pac. 859;

*Traphagen* v. *Kirk*, 30 Mont. 572, 75 Pac. 680; *Thomas* v. *Horst*, 54 Mont. 260, 169 Pac. 731; *Hensen* v. *Merton*, 57 Mont. 231, 187 Pac. 1016.)

"The official survey of government land will be presumed to be correct after the lapse of many years, where its disturbance would upset title and destroy rights of those who have in good faith relied on it." (*Kneeland* v. *Korter*, 40 Wash. 359, 1 L. R. A. (n. s.) 745, 82 Pac. 608; *Chaves* v. *Chaves De Sanchez*, 7 N. M. 58, 32 Pac. 137; *Barden* v. *Northern Pac. R. Co.*, 154 U. S. 288, 38 L. Ed. 992, 14 Sup. Ct. Rep. 1030; *Gardner* v. *Bonestell*, 180 U. S. 362, 45 L. Ed. 574; *Reagan* v. *Boyd*, 59 Mont. 453, 197 Pac. 832; *Leese* v. *Clark*, 18 Cal. 535.)

"The government is bound by a survey made under its directions, approved and recognized by it as valid for many years, and according to which land has been sold. The commissioner cannot, in summary manner, set aside the entry of a purchaser holding a patent certificate, on the ground that, by a resurvey, his house is found not to be upon the land preempted by him." (*Lindsey* v. *Hawes*, 2 Black (U. S.), 544, 15 L. Ed. 265; *Spawr* v. *Johnson*, 49 Kan. 788, 31 Pac. 664; *Golterman* v. *Schiermeyer*, 111 Mo. 404, 19 S. W. 484.) "A defect in a survey is cured by the issue of a patent thereon." (*Mackay* v. *Easton*, 19 Wall. (U. S.) 619, 22 L. Ed. 211 [see, also, Rose's U. S. Notes].)

*Mr. L. M. Van Etten*, for Respondent, submitted a brief, and argued the cause orally.

Counsel for appellant claim that the defendant is attempting to impeach, assail and set aside a patent regular on its face, when, as a matter of fact, the only thing being done by defendant is to show the limitations of said patent. Plaintiff having claimed more under its terms than it is entitled to because, as has been frequently declared by the United States supreme court, a patent conveys only land which has been surveyed. (*Horne* v. *Smith*, 159 U. S. 40, 44, 45, 40 L. Ed. 68, 70, 15 Sup. Ct. Rep. 988; *West* v. *Cochran*, 17 How. (U. S.) 307, 403,

15 L. Ed. 110, 113; *Security etc. Co.* v. *Burns*, 193 U. S. 167, 48 L. Ed. 662, 668, 24 Sup. Ct. Rep. 425; *McIver* v. *Walker*, 9 Cranch (U. S.), 173, 3 L. Ed. 694; *Niles* v. *Cedar Point Club*, 175 U. S. 300, 44 L. Ed. 171, 173, 20 Sup. Ct. Rep. 124; *French Glenn Live Stock Co.* v. *Springer*, 185 U. S. 47, 52, 46 L. Ed. 800, 802, 22 Sup. Ct. Rep. 563; *Kean* v. *Calumet Canal etc. Co.*, 190 U. S. 498, 47 L. Ed. 1152, 23 Sup. Ct. Rep. 651 [see, also, Rose's U. S. Notes].)

Where lands are granted according to an official plat of the survey thereof, the plat itself, with all of its notes, lines, descriptions and landmarks, becomes a part of the deed, and controls as if such descriptive features were written in the deed (*Barringer* v. *Davis*, 141 Iowa, 419, 120 N. W. 65–68; *United States* v. *Montana Lumber Co.*, 196 U. S. 573, 49 L. Ed. 604, 25 Sup. Ct. Rep. 367; *Little* v. *Williams*, 231 U. S. 335, 58 L. Ed. 156, 34 Sup. Ct. Rep. 68 [see, also, Rose's U. S. Notes]; *Weaver* v. *Howatt*, 161 Cal. 77, 118 Pac. 519).

Until all conditions as to filing in the proper land office and all requirements as to approval have been complied with, the lands are to be regarded as unsurveyed, and not subject to disposal as surveyed lands. (*Cox* v. *Hart*, 260 U. S. 427, 67 L. Ed. 332–338, 43 Sup. Ct. Rep. 154; *United States* v. *Morrison*, 240 U. S. 192, 210, 60 L. Ed. 599, 607, 36 Sup. Ct. Rep. 326 [see, also, Rose's U. S. Notes]; *United States* v. *Curtner*, 38 Fed. 1, 10; *Sawyer* v. *Gray*, 205 Fed. 160.)

MR. JUSTICE STARK delivered the opinion of the court.

This cause involves the title and right to the possession of a strip of land 277.8 feet wide and one-half mile in length, containing 15.56 acres located in section 34, township 4 north, range 7 west, in Jefferson county.

The complaint alleges the corporate existence of the plaintiff and that it is, and at all times therein mentioned was, the owner and entitled to the possession of the southeast quarter of section 34, township 4 north, range 7 west, known locally as the Peter Hansen ranch; that on or about the fifth day of August, 1920, the defendant wrongfully entered upon said

premises and began digging fence post holes thereon parallel with the west side line thereof, and threatened to build a fence upon a portion of the same and thereby interfere with plaintiffs' peaceful enjoyment.

The defendant's answer admitted that plaintiff was a corporation, but denied generally all the other allegations of the complaint and set up title in himself under a government patent. The case was tried before the court without a jury on June 22, 1922.

To sustain the allegations of its complaint the plaintiff first offered in evidence a patent from the United States of America to Peter Hansen conveying to him the southeast quarter of the southeast quarter and the west half of the southeast quarter of section 34, township 4 north, range 7 west, "containing 120 acres more or less according to the official plat of the survey of said lands returned to the general land office by the surveyor-general," which patent was dated June 20, 1883, and also a homestead patent for the northeast quarter of the southeast quarter of said section 34, "containing forty acres according to the official plat of the survey of said land returned to the general land office by the surveyor-general," issued to Jeremiah Collins and dated December 8, 1905.

By the evidence and stipulations of counsel it was shown that by mesne conveyances all the right, title and interest of Peter Hansen and Jeremiah Collins in and to the lands mentioned in these patents had passed to the plaintiff long prior to the commencement of this suit and that the plaintiff was the owner and in actual possession of the same. It was also stipulated that the defendant entered into and within the exterior boundary lines of the land claimed by the plaintiff at a point approximately 280 feet east of a fence that inclosed the so-called Peter Hansen premises on the west side and dug a series of post-holes from the south boundary fence north and parallel with the said west fence line and that said west fence line runs north from a certain monument or stone set in the ground by W. W. De Lacy, a government surveyor on May 9, 1877, and

which said stone is the southwest corner of the premises described in the plaintiff's complaint.

The only matter developed at the trial upon which there was a serious dispute was whether this stone marked the location of the southwest corner of plaintiff's land, or whether such corner was located at a point approximately 280 feet to the east of it. For brevity the point indicated by this stone will be referred to as "Cor. A."

It was not disputed but that this stone was placed at this point by De Lacy on May 9, 1877, and had never been moved. It was also shown without dispute that Peter Hansen, for the purpose of inclosing the land embraced in his patent, as early as 1882 built a fence east from this stone a distance of one-half mile along the south boundary of section 34 to the southeast corner of this section being the common section corner of sections 34 and 35, township 4 north, range 7 west, and sections 2 and 3 of township 3 north, range 7 west, which was established by De Lacy, as hereinafter shown, on May 16, 1877, and which will be referred to as "Cor. B."

There were also introduced in evidence the field-notes and plat of the survey of the subdivisional lines of township 4 north, range 7 west, made by De Lacy in 1877. In making this survey De Lacy started at the point designated as "Cor. B" and ran north forty chains to the quarter section corner between sections 34 and 35, which will be designated as "Cor. C." On this plat the distance between "Cor. A" and "Cor. B" is shown as forty chains.

It was also shown that Hansen for the purpose of inclosing his land built a fence north from "Cor. A" to the point of intersection of a line projected due north from that corner with a line projected due west from "Cor. C," and also built a fence from the last-mentioned point east to "Cor. C," and likewise built a fence on his eastern boundary line. The fences so built were continuously maintained by Hansen from 1882 down to the time of his death in 1906, and subsequently by plaintiff and its predecessors in interest down to the time of the trial.

71 Mont.—4

[71 Mont. 44.]

It is thus seen that if the corners A, B and C are accepted, the northeast, southeast and southwest corners of the southeast quarter of section 34 were definitely established by the official government surveys.

The original field-notes and plat show that "Cor. A" was established by De Lacy by running a line from a designated point on the south boundary line of township 3 north, range 7 west, to the north boundary thereof "at the quarter-section corner between sections 3 and 34" where he set the stone which we have designated "Cor. A." The field-notes and plat also show that in this survey De Lacy ran a line from "Cor. A" a distance of forty chains and there "set a stone marked with an 'X' 12 inches in the ground for corner to sections 2, 3, 34 and 35," which is the point above designated as "Cor. B" and is the point above referred to as the eastern terminus of the fence which Hansen built along his south line from "Cor. A."

The testimony disclosed that upon this plat as originally prepared lines were drawn showing the west and north boundaries of the southeast quarter of section 34 which had been located by projecting a line due north from "Cor. A" and due west from "Cor. C" until they intersected, and that the area thus included had been marked "160 acres," but that at some subsequent time these north and west lines and also the figures "160" had been erased and in place thereof lines had been drawn showing that only the southeast quarter of the southeast quarter of section 34 had been platted and the figures "40" had been inserted in lieu of "160." When, by whom, or under what circumstances these erasures and changes were made was not definitely disclosed. It was shown, however, that the plats of surveys are prepared in the office of the surveyor-general from the field-notes of the surveyor making the survey, and that at the time the plat in question was originally prepared it was the custom to make a copy of the original plat to be forwarded to the commissioner of the general land office. The surveyor-general, testifying as a witness, said: "It might happen that the copy of the commissioner's plat sent to him

still shows that indicated as 160 acres survey of the southeast quarter of section 34.''

Following this testimony the plaintiff introduced in evidence Exhibit 30, being the certified copy of a letter from the acting commissioner of the general land office, addressed to the surveyor-general of Montana, dated November 4, 1905, concerning instructions to be given to one Frank M. Elmer in connection with further surveys to be made in township 4 north, range 7 west, adjacent to the surveys made by De Lacy in 1877, in which letter the writer said: ''A diagram of T. 4 N., R. 7 W. is attached herewith showing the old surveys platted according to their true length and bearing.''

The diagram attached to the letter and referred to therein shows the entire southeast quarter of section 34 as having been surveyed and platted, and also that the south line thereof was forty chains in length.

There were also introduced in evidence plats and field-notes of the surveys of eight quartz lode mining claims upon which patents had been issued by the United States government, which surveys had been made at different times from 1893 to 1914 by United States mineral surveyors and approved by the surveyor-general, each of which surveys is tied to Corner A, the reference thereto being: ''The quarter-section corner on the south boundary line of section 34, township 4 north, range 7 west.''

Considerable other testimony was introduced tending to show that ''Cor. A'' had at all times been generally recognized as the southwest corner of the southeast quarter of section 34.

On behalf of the defendant there was introduced a patent from the United States conveying to him, amongst other lands, lots 10 and 11, section 34, township 4 north, range 7 west, bearing date the twenty-ninth day of January, 1918. In connection therewith the plat of a survey of portions of this township made by Frank M. Elmer in 1907 and which is the survey referred to in Exhibit 30 above mentioned, and also an amended plat of a part of this same survey, were introduced, from which it is made to appear that the area embraced in what would other-

wise be the west half of the southeast quarter of section 34 is designated as lots 3 and 4, lot 4 being the southerly one, and that the distance from "Cor. B" to the southwest corner of lot 4 is 36.23 chains; that the lands lying immediately west of lots 3 and 4 are designated as lots 10 and 11, and that the corner heretofore designated as "Cor. A" is about 280 feet west of the southwest corner of lot 4.

The area embraced in a parallelogram formed by projecting lines north from "Cor. A" as located in the 1877 survey, and the southwest corner of lot 4 as shown in the 1907 survey, is the land involved in this suit.

After the introduction of all the testimony the trial court made findings of fact to the effect that all of this disputed area lies west of the east boundary line of lots 10 and 11 as established by the 1907 survey; that the plaintiff had no interest in any portion thereof, and as a conclusion of law found that the defendant was entitled to judgment against the plaintiff.

Subsequent to the decision of the court the plaintiff made a motion to remedy certain defects, omissions and deficiencies therein and that the court make and enter findings of fact and conclusions of law in its favor. This motion was denied and thereupon judgment was duly rendered in favor of the defendant, from which the plaintiff has appealed. Counsel for plaintiff have assigned seventy-five specifications of error, but it will not be necessary to consider any of them separately, since, in effect, they all aim at the same point.

From the foregoing statement it is apparent that the decisive question in the case is whether the point designated as "Cor. A," as established by the De Lacy survey of 1877, is the southwest corner of the southeast quarter of section 34, or whether the place designated in the 1907 survey as the southwest corner of lot 4 is the point of division on the south line of the premises claimed by the plaintiff and defendant.

The first position assumed by counsel for defendant in the [1] conduct of the trial of the cause in the lower court, as well as in his brief filed in this court, is that the southeast quarter of

section 34 had not been surveyed at the time the Hansen patent was issued and therefore there was nothing to which the description contained therein could attach, and that until the Elmer survey of 1907 it was a mere "floating description." This position, of course, cannot be sustained. The patent issued to Hansen is regular on its face. It is duly signed, countersigned and sealed. It is the highest possible evidence of title. When a patent for public land is issued by proper authority, it is presumed that all precedent conditions have been complied with (and one of these conditions is that the land has been surveyed), and such patent is not open to collateral attack. The decisions of the courts so holding are uniform. (*St. Louis S. & R. Co.* v. *Kemp,* 104 U. S. 636, 26 L. Ed. 875; *American Assn., Ltd.,* v. *Innis,* 109 Ky. 595, 60 S. W. 388; *United States* v. *Maxwell Land Grant Co.,* 121 U. S. 325, 30 L. Ed. 949, 7 Sup. Ct. Rep. 1015; *United States* v. *Reading,* 18 How. 1, 15 L. Ed. 291; *Simmons* v. *Wagoner,* 101 U. S. 260, 25 L. Ed. 910; *Johnson* v. *Towsley,* 13 Wall. 72, 20 L. Ed. 485; *De Guyer* v. *Banning,* 167 U. S. 723, 42 L. Ed. 340, 17 Sup. Ct. Rep. 937; *Le Marchel* v. *Teegarden* (C. C.), 133 Fed. 826; *Steele* v. *St. Louis Smelting etc. Co.,* 106 U. S. 447, 27 L. Ed. 226, 1 Sup. Ct. Rep. 389; *Turner* v. *Donnelly,* 70 Cal. 597, 12 Pac. 469; *Hoofnagle* v. *Anderson,* 7 Wheat. (U. S.) 212, 5 L. Ed. 437 [see, also, Rose's U. S. Notes]. And such has been the holding of this court in the cases of *Ming* v. *Foote,* 9 Mont. 201, 23 Pac. 515; *Colburn* v. *Northern Pac. Ry. Co.,* 13 Mont. 476, 34 Pac. 1017; *Gebo* v. *Clarke Fork Coal Co.,* 30 Mont. 87, 75 Pac. 859; *Traphagen* v. *Kirk,* 30 Mont. 562, 77 Pac. 58; *Thomas* v. *Horst,* 54 Mont. 260, 169 Pac. 731.)

It is further contended by the defendant that since the point designated as "Cor. A"—that is, the quarter-section corner between sections 3 and 34—was established in running the north boundary line of township 3 and not in running the south boundary line of township 4, it was a legal establishment only of the north quarter-section corner of section 3 and did not establish the south quarter-section corner of section 34, and also that, since the field-notes and plat of the 1877 survey of

township 4 north do not show that the quarter-corners were established on the north and west boundaries of section 34, that survey did not bring the situation within the rule of the general land office that when three surveyed corners of a quarter-section are established it constitutes a survey thereof, even though it be conceded that ''Cor. A'' did establish the south quarter corner of section 34. We do not think these contentions can [2] be sustained. The Hansen patent conveyed the land ''according to the official plat of the survey of said lands returned to the general land office by the surveyor-general.'' Where lands are so granted, the plat itself with all of its notes, lines, descriptions and landmarks becomes a part of it. (*Barringer* v. *Davis*, 141 Iowa, 419, 120 N. W. 65; *United States* v. *Montana Lumber Co.*, 196 U. S. 573, 49 L. Ed. 604, 25 Sup. Ct. Rep. 367; *Little* v. *Williams*, 231 U. S. 335, 58 L. Ed. 256, 34 Sup. Ct. Rep. 68 [see, also, Rose's U. S. Notes]; *Weaver* v. *Howatt*, 161 Cal. 77, 118 Pac. 519.)

If we should concede that the plat on file with the commissioner of the general land office at the time of the issuance [3] of the Hansen patent mistakenly shows that the entire southeast quarter of section 34 had been surveyed by reason of the fact that the draftsman in the surveyor-general's office in Montana had failed to follow the rules with reference to the preparation of such plat, that would not help defendant's position. He could not under his answer properly have been allowed to so show such mistake for the reasons pointed out above; but even if he had properly pleaded and proven such a mistake it would not have availed him, for, as was said by the supreme court of Iowa in *Hedrick* v. *Eno*, 42 Iowa, 411: ''But in case the instructions were not followed as to location of corners and the like, we hardly think it could be held that the survey should be set aside for that reason, after having been adopted by the department, plats made therefrom which were recognized by the government as correct and true, and the lands sold in subdivisions as indicated thereby.''

Turning now to the record relating to the plaintiffs case, we find it is conceded that De Lacy established corners B and C

(the southeast corner of section 34 and the quarter-section corner between sections 34 and 35) in May, 1877; also that he establishd ''Cor. A'' as the quarter-section corner between sections 3 and 34 in the same month.

We think it satisfactorily appears from these surveys that independent of any presumptions which arise from the issuance of the patent itself, a plat was in fact prepared which showed the southeast quarter of section 34 to have been surveyed with its southwest corner at the point designated ''Cor. A''; that a copy of this plat was forwarded to the commissioner of the general land office by the surveyor-general of Montana and that such plat, showing the location of the southeast corner of section 34 to be at a point forty chains west of ''Cor. B,'' was the one referred to in the Hansen patent. To hold otherwise would render it necessary to wholly disregard the plat attached to exhibit 30 which shows that for at least a period of twenty-three years it had been regarded in the general land office that the southeast quarter of section 34 was surveyed by De Lacy in 1877 and that the south line thereof was forty chains in length.

The fact that a subsequent survey made a change in these lines and corners cannot affect the rights of the plaintiff which [4] were acquired by its predecessors long before the later survey. Original surveys of public lands by the United States government, on the faith of which property rights have been acquired, control over surveys subsequently made by the government which affect such rights. (22 R. C. L. 282, sec. 42; *Burt* v. *Busch,* 82 Mich. 506, 46 N. W. 790; *Barringer* v. *Davis,* 141 Iowa, 419, 120 N. W. 65; *Slack* v. *Orillion,* 13 La. 56, 33 Am. Dec. 551; *Washington Rock Co.* v. *Young,* 29 Utah, 108, 110 Am. St. Rep. 666, 80 Pac. 382; *Miller* v. *White,* 23 Fla. 301, 2 South. 614; 5 Cyc. 946.)

On this state of the record the trial court was in error in holding that the defendant owns and is entitled to the possession of the strip of land in controversy, and erred in failing to sustain the plaintiff's motion to correct the findings of fact and

conclusions of law upon which the judgment in the action is based.

For these reasons the judgment appealed from is reversed and the cause remanded to the district court, with directions to modify the findings of fact and conclusions of law in accordance with the plaintiff's motion, and to enter judgment thereon in favor of the plaintiff.

*Reversed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY and GALEN, concur.

MR. JUSTICE COOPER, being absent, did not hear the argument and takes no part in the foregoing decision.